[No. 8354.   Department One.   January 28, 1910.]

OTTO KEMPE, *Appellant*, v. C. T. JOHNSON, *Respondent*.[1]

SALES—FACTORS—CONTRACT — EVIDENCE — SUFFICIENCY. The evidence shows a sale, and is insufficient to warrant a finding of a consignment to a broker for sale on commissions, where it appears that the defendant bargained for potatoes from various owners at a specified price, intermingled the different consignments, kept no books as required of commission merchants by statute, and all the consignors testified to absolute sales.

SET-OFF AND COUNTERCLAIM—SEVERAL CAUSES ASSIGNED—SALES——INTERMINGLING OF PRODUCE. Where potatoes are sold by various parties and intermingled by the defendant, and all claims for the price were assigned to one person, who sued therefor, the defendant is entitled to a deduction for part returned as unmarketable, although he would have been unable to secure an offset against any individual claim.

TENDER—DEPOSIT IN COURT—ACCEPTANCE—EFFECT. The acceptance of a deposit, unconditionally paid into court by defendant to be credited upon the account, does not operate as a settlement or end the controversy as to the balance claimed.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered May 29, 1909, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action on contract. Reversed.

*Belt & Powell*, for appellant.

*Scott & Campbell*, for respondent.

PER CURIAM.—In the spring months of 1908 certain farmers residing in Spokane county, Washington, severally owning a quantity of potatoes, delivered the same to the respondent, who shipped them in part to dealers in San Francisco, California, and in part to dealers in Seattle, Washington. It is the claim of the consignors of the potatoes that they sold the same to the respondent at agreed prices, a part at the rate of 55 cents per hundred pounds, and a part at the rate

[1]Reported in 106 Pac. 619.

of 54 cents per hundred pounds, while it is the claim of the respondent that the potatoes were consigned to him on commission to ship and sell for the highest price obtainable, and that he had sold them for the highest price obtainable, and that he had accounted to the consignors for the potatoes in so far as he had himself received returns from the sales. To determine their respective disputes, the consignors assigned their claims to the appellant, who instituted this action to recover the unpaid balances. The court found that the respondent was acting as a commission broker when he received and sold the potatoes, and entered judgment accordingly.

On the question of fact we are convinced that the court reached an erroneous conclusion. No doubt the respondent when he contracted with his consignors expected to ship the potatoes to dealers and there sell them, but his conduct clearly forbids the conclusion that he was acting as a commission merchant. When he bargained for the potatoes he fixed the price the consignors were to receive therefor at 55 cents and 54 cents per hundred pounds, and of course anything received above that price was to be his profit. He made no effort to keep the potatoes of each vendor separate in his own shipments; on the contrary, the potatoes of the different consignors were intermingled and shipped in bulk, so that when the returns came in and certain of the potatoes were returned as unmarketable, the respondent was unable to tell whose potatoes they were. Again, no books were kept showing the names of the consignors of the potatoes, their condition when received, the name of the person to whom they were sold, with the amount and date of sale, etc., as required by the statute. Laws 1907, p. 267, § 3 (Rem. & Bal. Code, § 7026). Nor did the respondent, in so far as the record shows, make known until the time of the trial the names of the parties to whom he had sold the potatoes. Moreover, the testimony of all the consignors was to the effect that they had sold the respondent the potatoes directly,

and the weight of the evidence, even if we disregard the circumstances, seems to us to be with the appellant. We think, therefore, that it is too much to say that the respondent was acting merely as a dealer selling on commission when he received the consignments in question.

The conclusion we have reached on the facts warrants a recovery on the part of the appellant. In determining the sum to be recovered the trial court should allow as a credit, in addition to the several sums paid the consignors, a deduction for the potatoes returned as "spoiled" or unmarketable. While the respondent could not, perhaps, have deducted this against any single one of his consignors had they sued him individually, it is proper, since the claims are all now in one ownership, that the deduction be made from the entire mass.

Subsequent to the commencement of the action the respondent paid into court an additional sum to be credited on the account. This sum was withdrawn by the appellant's counsel, and it is now insisted that this withdrawal was a settlement of the controversy and operated as a payment of the balance claimed to be due. But the payment into court was made for the benefit of the appellant and his assignees, and was made without condition of any kind. The money was, therefore, the appellant's property and no penalty attached to his taking it. Of course, it operated as a payment *pro tanto* of his claim, and he can now have a judgment for the balance due only, but this is the extent of his liability for taking the money. The withdrawal of the sum paid did not constitute an abandonment of his cause of action for the balance remaining due. *Tilden v. Gordon & Co.*, 34 Wash. 92, 74 Pac. 1016.

The judgment appealed from is reversed, and the cause remanded with instructions to take an accounting on the basis suggested in the opinion and enter judgment for the appellant for the amount found to be due.