# D. M. Ferry & Co. *v*. Hall.

## *Assumpsit.*

(Decided June 30, 1914.  66 South. 104.)

*Sales; Construction; What Constitutes.*—Where a seed company consigned seed to retail dealers under an agreement for the sale of the seed on commission with a return of the unsold seed when called for, to be taken back at the invoice price, and the amount due for the seed sold paid at that time, the transaction constituted a sale, the title passing to the dealers, and hence, defendant was not liable for the payment of taxes upon the seed; it further appearing that defendant did not fix the price of the seed, and the retailers were not required to account after each sale, but were only entitled to a deduction for the amount of the seed returned unsold.

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

Assumpsit by D. M. Ferry & Co. against Smith Hall, as Tax Collector, to recover taxes paid under protest. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

The following is Exhibit A:

D. M. Ferry & Co., Detroit, Mich.:  Please forward in due season a number blank box of standard garden seed, flower seed and field seed, to sell on commission for the year 191—on the following terms, viz., 40% commission on the papers sold, and 25% on packages sold from the invoice prices; the unsold seed with the boxes to be returned in good order when called for, and the amount due for all seed not so returned to be paid for at same time.

On the reverse side was certain printing and blank not necessary to be here set out.

Exhibit B:

Memorandum of Shipment from D. M. Ferry & Co., Detroit, Mich., to John Doe, Dothan, Ala.  In compli-

ance with your order we have this day forwarded you care of ——— box ——— of our standard garden seed, an itemized retail invoice of which you will find on inside of box cover. If at any time you have not a sufficient supply of 5 cent papers, please order such as you may need, and we will promptly forward them by mail post paid.

Then follow certain directions as to freight charges, etc., and the added caution:

Please have goods removed from depot promptly on arrival and avoid storage charges.

Exhibit C:

No allowance for exchange. Error or shortage must be reported at once. D. M. Ferry & Co. give no warranty, express or implied, as to descriptions, surety, productiveness or any other matter on any seed they send out, and they will not be in any way responsible for the crop. If the purchaser does not accept the goods on these terms, they are to be returned at once. We agree to buy back all unsold seed with boxes at prices billed, less discount, when our traveler calls.

This invoice and memorandum of shipment, together with the order marked Exhibit A, constitutes the original contract between D. M. Ferry & Co. and the original merchant. On the boxes shipped would be pasted the following paster, marked Exhibit D:

This case, including all papered seed and boxes invoiced on case cover are placed on commission, not sold outright.

D. M. Ferry & Co.

STANDISH BACKUS, and WEIL, STAKELY & VARDAMAN, for appellant. The title to the seed had vested in the retail merchants at the time of the delivery of the seed to the merchant, and hence, appellant was not liable for

the taxes thereon.—35 Cyc. 41; and 290; *Jackson v. State,* 57 South. 110; 24 A. & E. Enc. of Law 1026; 2 Benj. on Sales, 794; 118 Fed. 471; 135 Fed. 868; 140 Fed. 572; *In re Heckathorn,* 144 Fed. 499; *Bradley Alderson & Co. v. McAfee,* 149 Fed. 254; *Coweta Fert. Co. v. Brown,* 163 Fed. 162; *In re Allen,* 183 Fed. 172; *Snelling v. Arbuckle Bros.,* 104 Ga. 362; *Chickering v. Bastress,* 130 Ill. 206; *Peoria Mfg. Co. v. Lyons,* 153 Ill. 427; *David Bradley Mfg. Co. v. Rayum,* 70 Ill. App. 639; *Independent Brewing Association v. Cook Brewing Co.,* 169 Ill. 347; *Aspinwall Mfg. Co. v. Johnson,* 97 Mich. 531; *People v. Newman,* 99 Mich. 148, 57 N. F. 1073; *DeKruiff v. Fleiman,* 130 Mich. 12; *Braun v. Keally,* 145 Pa. St. 519; *Bicking v. Stevens,* 69 Mo. Apps. 168; *Buffun v. Descher,* 96 N. W. 352 (Neb.); *Baker v. Turner,* 46 N. Y. Supp. 25; 19 App. Div. 223; *People v. Cannon,* 139 N. Y. 32 Am. St. Reports 668; *Conn v. Chamber,* 107 N. Y. Supp. 976, 123 App. Div. 298. Some of the essential elements of an agency and some of the essential elements of a bailment are lacking.—*Snelling v. Arbuckle Bros.,* 104 Ga. 362; *In re Carpenter,* 125 Fed. 831; *In re Rabenau,* 118 Fed. 471, supra; *In re Wells,* 140 Fed. 752 supra; *Bradley Anderson & Co. v. McAfee,* 149 Fed. 254; 35 Cyc. p. 28, § 4; *Norwegian Plough Co. v. Clark,* 102 Iowa 31; *Arbuckle Bros. v. Gates,* 95 Va. 802. The contracts under consideration are not conditional contracts of sale but are that class of sales contracts ordinarily termed "sale or return."—*In re Landis,* 151 Fed. 896; *In re Allen,* 183 Fed. 172; *Allen Bethune & Co. v. Maury & Co.,* 66 Ala. 10; *Robinson v. Fairbanks,* 81 Ala. 132; *Foley v. Felrath,* 98 Ala. 176; *Town of Cottonwood, et al. v. Austin,* 158 Ala. 117; *Hotchkiss v. Higgins,* 52 Conn. 205; *Welsh v. McNerny,* 74 Conn. 675; *House v. Beak,* 141 Ill. 290; 33 Am. St. Rep. 307; *Warder, Mitchell & Co. v. Hoover,* 51 Iowa 491; *Walker*

*v. Blake,* 37 Me. 373; *McKinney v .Bradlee,* 117 Mass.
321; *Moss v. Swett,* 3 Eng. & Law & Eq. Rep. 311; *In re*
*Wells, supra; In re Miller v. Brown, supra; Peoria Mfg.*
*Co. v. Lyons, supra,* 35 Cyc. p. 290, § 5.

ESPY & FARMER, for appellee. Under the facts in the
case the title to the seed remained in appellant, and at
the time of the assessment, the seed were the property
of appellant and not that of the merchant.—*Thornton v.*
*Cook,* 97 Ala. 632; *Fleet v. Hertz,* 94 Am. Rep. 192. As
to whether goods were sold or consigned—whether a
sale or a bailment—see 35 Cyc. 28 and 169. The seed
were tangible, visible, personal property, and could have
acquired a status for the purpose of taxation in this
state.—*Trammell v. Connor,* 91 Ala. 399; *Boyd v. Selma,*
96 Ala. 154; *National D. Co. v. State,* 99 Ala. 463; 37
Cyc. 798, et seq.

GARDNER, J.—This cause was transferred to this
court from the Court of Appeals under the provision of
Acts of 1911, p. 449.

The appellant brought suit against the appellee for
the recovery of $203 paid by appellant to appellee, as
tax collector for Houston county, under protest, suit
having been brought by said tax collector for said sum
due as taxes and garnishment issued in aid thereof.

The cause was submitted in the court below upon an
agreed statement of facts, in which it was agreed that
the facts in said cause were as set out in said agreement,
and that the "cause be submitted to the jury upon said
statement of facts, and that the liability, if any, of the
defendant arises out of said facts." The agreement fur-
ther stipulates: "It is further agreed by and between
the parties hereto that the only question presented for
the court for its decision, in this case is whether or not

the assessment for the collection of the taxes, due on said seed, should have been made against the said D. M. Ferry & Co., or against the merchants to whom said D. M. Ferry & Co. had shipped the seed, and in whose possession said seed were at the time the assessments were made, under the facts hereinafter set forth; and if the assessments for the collection of said taxes should have been made against said D. M. Ferry & Co., then the defendant is entitled to judgment; but if said assessments for the collection of said taxes should not have been made against D. M. Ferry & Co., then the plaintiff is entitled to recover."

The sole question, therefore, for determination is: In whom, for the purposes of taxation, vested the title or property to the seed in possession of the retail merchants? If the seeds were the property of the appellant, then it is conceded and agreed the defendant is entitled to judgmnt, and, on the other hand, it is likewise conceded and agreed that, if the seeds were the property of the retail merchants, then appellant is entitled to judgment.

The order of the retail merchant, the letter of acceptance accompanied by the invoice, and the placing of the paster marked in the record "D" on the box when shipped, together with the method or course of dealing with reference to said transactions between the wholesaler and the retailer, as disclosed by said agreed statement of facts, are the matters upon which, according to said agreement, we are to conclude the title to said seed.

The order has on it the word "consignment," and that which is signed by the retailer has the words "to sell on commission," showing the terms as 40 per cent. commission on the papers sold, and 25 per cent. on the packages sold, from the invoice prices; the unsold seed, with boxes, to be returned in good order when called for, and

amount due for all seeds not so returned to be paid at the same time.

The invoice which accompanied the memorandum of shipment had thereon, among other things, the following: "Terms: To be settled for when traveler calls. Sold to Mr. John Doe, etc. We agree to buy back all unsold seeds with boxes at prices billed, less discounts, when our traveler calls."

The agreement shows that this memorandum of shipment and invoice, together with the order, constituted the original contract between appellant and the retail merchant, but that the boxes, when shipped, would have pasted on them the paster marked in record Exhibit D, and which appears in report of the case. The reporter will set out Exhibits A, B, C, and D, as found on pages 12, 13, 14, and 15 of the transcript, in his report of the case.

The following extract from the agreed statement of facts explains the method or course of dealing as between the wholesale and retail merchants, as to such transactions: "At the close of each season in which said seed was so sold, the traveling salesman representing D. M. Ferry & Co., would call upon the retail merchant and adjust the local dealer's account with D. M. Ferry & Co., taking back the unsold seeds in said box or boxes, allowing credit for the seed at invoice prices, and collecting cash for the balance of the seed at invoice prices, less the commission provided for in the original contract. The retailer, in selling the foregoing seed to his customers, would fix the price at which he would sell them, and would also have entire control of the seed, while the seed was in his possession and control, and would also sell the seed and collect for the seed from his customers in his own name. D. M. Ferry & Co. were in no way interested in the price which the retailer obtain-

ed for the said seed, but merely took back the unsold seed, allowing credit therefor at invoice prices and collecting, for the seed not returned, the invoice prices, less commissions. The said seed were in packages and papers. D. M. Ferry & Co. printed a price upon said packages, but printed no price upon the papers; but, for the seed not returned by the retailer to D. M. Ferry & Co., the retailer accounted to D. M. Ferry & Co. for each package, not returned, at the price printed on said package, and at the price of five cents for each paper, less the commission.

"The retailer renders no account to D. M. Ferry & Co. of any sales made by him, and gives no information in regard thereto, but the representative of D. M. Ferry & Co. goes annually to each retailer, makes his own investigation from the seed that the retailer has on hand, and states the account between the retailer and D. M. Ferry & Co.

"There was no agreement between the retailer and D. M. Ferry & Co. that the seed would be sold at the prices named on the packages, nor as to the price at which the papers were to be sold; but the retailer was made to account to D. M. Ferry & Co. for all seed, not returned, at the prices printed on the packages and at five cents for the papers, which is invoice prices."

"Ordinarily where goods are consigned by one person to another for sale by the latter, the title thereto remains in the consignor; but whether the consignee is to be considered as a buyer or an agent depends upon the intention of the parties, and upon the real nature of the transaction rather than the language which the parties may have employed. So where the transaction is such that the consignee acquires complete dominion over the goods with the right to sell them upon such terms and conditions as he may see fit, and is bound to pay the

consignor a stipulated price therefor, it amounts to a sale and delivery, and the title passes to the consignee, and such transfer of title is not affected by the fact that the goods are not to be paid for until resold by the consignee, or that he has an option of returning the goods which he has not resold."—35 Cyc. 290, 291.

Mr. Mechem in his work on Sales, in volume 1, § 46, has this to say: "The distinction between sale and an agency to sell is ordinarily clear and simple, but, unfortunately, many cases are presented in which the parties, for the purpose of evading the operation of some local statute, of defeating the claims of creditors, or otherwise, have made contracts involving such a confused jumble of the elements of both sale and agency that it is exceedingly difficult to determine their true character. Certain of these contracts have evidently been framed for the purpose of concealing a sale under the guise of an agency, while others have been drawn with a view to having them construed as contracts of sale or agency, as might best suit the convenience or subserve the purposes of their framers. In construing these anomalous instruments, courts look chiefly at the essential nature and perponderating features of the whole instrument, and not at the peculiar form of isolated parts of it. It matters very little what the parties have chosen to call their contract. * * * If the parties have made a contract which really operates to transfer the title, it is a sale, notwithstanding they may have labeled it a 'special selling factor appointment,' or have expressly stipulated that the alleged factor 'shall never purchase such goods for his own account.' So with regard to the use of the term 'consign.' It may express the true state of the case, and, if so, it will be given effect; or it may be a mere subterfuge, and, if it be the latter, 'there

is no magic in that word which can take from the transaction its real character."

This is peculiarly illustrated by the *cases of Arbuckle Bros.,* whose contracts have been the subject of review in some of the courts of last resort, notably those of Georgia, Tennessee, and Virginia, wherein it was held that notwithstanding the contract was called, and purports on its face to be, a "special selling factor appointment," stipulates for a retention of title, and that the goods shall be consigned and held by the party, merely as a factor, and that such factor shall never purchase such goods on his own account, and the same to be sold in name of the factor, but only as the factor of Arbuckle Bros., and only at such prices and on such terms, as said Arbuckle Bros. may give from time to time. The contract provided also for certain "allowances and commissions." There were other provisions as to payments, etc., and these courts held that the entire contract disclosed a sale and not an agency, notwithstanding the many such expressions to be found therein.—*Arbuckle Bros. v. Gates & Brown,* 95 Va. 802, 30 S. E. 496; *Arbuckle Bros. v. Kirkpatrick,* 98 Tenn. 221, 39 S. W. 3, 36 L. R. A. 285, 60 Am. St. Rep. 854; *Snelling v. Arbuckle Bros.,* 104 Ga. 362, 30 S. E. 863.

Speaking of this contract, the court in the latter case says: "It appears to have been drawn for the purpose of enabling Arbuckle Bros. to 'run with the hare or hold with the hounds,' according as, in the exigencies of a given case, their interest might dictate."

In reference to the same contract, the Supreme Court of Virginia, in above case of *Arbuckle Bros. v. Gates & Brown,* said: "The agreement was an attempt to accomplish that which cannot be done—to make a sale of personal property and at the same time constitute the buyer simply an agent of the seller to hold the property un-

til it is paid for. The two things are incompatible and cannot co-exist. The agreement had in it every element of sale. It was in substance and effect a sale, and must be so declared. It does not matter by what name the parties chose to designate it. That does not determine its character. The courts look beyond mere names and within they see the real nature of an agreement and determine from all its provisions, taken together, and not from the name that has been given it by the parties, or from some isolated provision, its legal character and effect."

The following excerpt from the case of *Buffum v. Descher,* 1 Neb. (Unof.) 736, 96 N. W. 352, is in point in this connection: "In all the cases it is held that the relation of the parties as principal and agent, or as vendor and vendee, is determined by the nature of the transaction, and not by the name which they give it, and the use of the words 'agent,' 'commissions,' etc., is of little significance. If the goods are delivered to the 'consignee' under such circumstances as to confer upon him absolute dominion over them, and he becomes bound to pay a stipulated price for them at a certain time or upon the happening of any future event, the transaction amounts to a sale and delivery, and the title passes to him."

The case often cited and referred to as a leading case among cases of this character is that of *Ex parte White,* L. R. Ch. 397. In stating the transaction between the parties, James, L. J., in his opinion says: "Mr. Nevill was to dispose of the goods sent to him by Toole & Co. and was not to pay for them unless he disposed of them, and he was to return, at the end of every month, an account of sales that he had actually made; and then, after the lapse of another month, he was to pay in cash for the amount of goods he had disposed of, according to

their value as fixed by a price list sent to him. It does not appear that he ever was expected to return any particular contract, or the names of the persons with whom he had dealt. He pursued his own course in dealing with the goods, and frequently before sale had manipulated them to a very considerable extent by pressing, dyeing, and otherwise altering their character;   *   *   * and he sold them on what terms he pleased as to price and length of credit."

The opinion then proceeds: "If he was entitled to alter them, to manipulate them, to sell them at any price that he thought fit after they had been so manipulated, and was still only liable to pay for them at a price fixed beforehand, without any reference to the price at which he had sold them, or to anything else than the fact of his having sold them in a certain month, it seems to me impossible to say that the produce of the goods so sold was the money of the consignors, or that the relation of vendor and purchaser existed between *Toole & Co. and the different persons* to whom he sold the goods." (Italics ours.)

The opinion also says: "That it has been admitted in the course of the argument that there is no magic in the word 'agency.' It is often used in commercial matters when the relationship is that of vendor and purchaser."

It was held in that case that: "Mr. Nevill was in the position of a person having goods 'on sale or return.' "

In the same case from which we have just quoted, Mellish, L. J., said: "But if the consignee is at liberty, according to the contract between him and his consignor, to sell at any price he likes, and receive payment at any time he likes, but is to be bound, if he sells the goods, to pay the consignor for them at a fixed price at a fixed

time, in my opinion, whatever the parties may think, their relation is not that of principal and agent. The contract of sale which the alleged agent makes with his purchasers is not a contract made on account of his principal, for he is to pay a price that may be different and at a time that may be different from those fixed by the contract.   *   *   *   If A. hands over his goods to B., and B. is to pay him a certain price if he sells, but is at liberty to sell on what terms he pleases, and B. then sells to C., the natural inference from these facts is, beyond all doubt, that there is a sale made to B. and another sale from B. to C., and all the circumstances confirm the view that such was the nature of the dealing here."

The following authorities also may be cited in addition to the above, to the effect that the mere use of the words "agent," or "consignment," or "commissions," etc., does not determine the character of the contract, but that it is the duty of the court to reach the *real intention* of the parties and declare the relationship.— *Chickering v. Bastress,* 130 Ill 206, 22 N. E. 542, 17 Am. St. Rep. 309; *Jackson v. State,* 2 Ala. App. 226, 57 South. 110; *Peoria Mfg. Co. v. Lyons,* 153 Ill. 427, 38 N. E. 661; *Heryford v. Davis,* 102 U. S. 235, 26 L. Ed. 160; *House v. Beak,* 141 Ill. 290, 30 N. E. 1065, 33 Am. St. Rep. 307; *In re Wells* (D. C.) 140 Fed. 752; *In re Carpenter* (D. C.) 125 Fed. 831; *Baker v. Turner,* 19 App. Div. 223, 46 N. Y. Supp. 25; *Bradley Alderson & Co. v. McAfee* (D. C.) 149 Fed. 254; *People v. Newman,* 99 Mich. 148, 57 N. W. 1073.

In this latter case it is said in the opinion that "calling profits 'commissions' does not change their character."

Mr. Mechem (volume 1, § 43) thus distinguishes a sale from agency to sell in these words: "The essence

of sale is, as has been seen, the transfer of the title to the goods for a price paid or to be paid. Such a transfer puts the transferee, who has procured the goods to sell again, in the attitude of an owner selling his own goods, and makes him liable to the first seller as a debtor for the price and not, as an agent, for the *proceeds* (italics ours) of the resale. The essence of the agency to sell is the delivery of the goods to a person who is to sell them, *not as his own property but as the property of the principal* (italics ours), who remains the owner of the goods and who therefore has the right to control the sale, to recall the goods, and to demand and receive their *proceeds* when sold, less the agent's commission, but who has no right to a price for them before sale or unless sold by the agent."

While, in the instant case, a portion of the contract has the words "sell on commission" and the word "consignment" written thereon, yet other portion (memorandum of shipment and invoice, etc.) make use of the words "sold to" and agreement to "buy back," and nothing is said as to the title to the seeds or that the retail merchant is in fact the *agent* of the wholesaler, and, from what is therein contained, it is difficult to determine the real intention of the parties. The agreed statement of facts, however, contains the method of business, the course of dealing in reference to such transactions, and from such agreement it is disclosed that the retail merchant acquires complete dominion and control of the seeds, makes sales to *whom* he pleases at his *own prices* and on *whatever terms* he pleases, and makes no accounting whatever to the wholesaler. Indeed, from the agreed statement of facts it appears the retailer deals with the seed *as his own*. He need not sell at all, but may give away the seed or use them himself. He is to account to the wholesaler for the seed *not returned*

at the invoice price, less the commission, when the traveling man calls and adjusts the accounts, giving the retailer credit for the unsold seed at invoice price. This settlement is *not* to be made as the seeds are sold, but the settlement is to be made when the "traveler calls"; that is, on demand, as it were. The retailer sold to his customer in his own name, and the wholesaler was in no manner interested in the price obtained, but merely took back the unsold seeds, allowing credit therefor at invoice prices. When sold by the retailer, the *proceeds* of the sale were *his* own, and no duty rested on him to account therefor to the wholesale dealer.

Under the agreed statement of facts as shown by the record, guided by the rules of law as found in the foregoing authorities, we think it quite clear that the retailer was not a mere agent but was in fact a purchaser of seeds. It is shown that the retailer had the right to return the unsold seeds, and that the wholesaler agreed to buy them back at invoice prices. What, then, is the relation between the parties?

In the case of *Allen, Bethune & Co. v. Maury & Co.,* 66 Ala. 10, it was said: "A sale may properly be defined to be, 'a transfer of the *absolute* or *general* property in a thing, for a price in money.' * * * If anything remains to be done by either party to the transaction, before delivery (as, for example, to determine the price, quantity, or identity of the thing sold), the title does not vest in the purchaser, but the contract is merely executory. * * * Where, however, goods are sold and delivered, the terms of sale being specified, and the vendee reserves the right to reject or return, the title passes, liable to be divested by the exercise of this option to rescind, expressed within a reasonable time."

The case of *Robinson & Ledyard v. Fairbanks & Co.,* 81 Ala. 132, 1 South. 552, is somewhat in point in this

connection, and in which the court said: "In our judg-
ment the contract was not a bailment, or a 'sale on
trial' or 'approval,' in which there is no sale until an
approval is given, expressly or by implication. But it
more nearly resembles a contract, or bargain of 'sale or
return,' which vests the property in the goods, or so
much of them as remained on hand at a fixed day in the
future."

See, also, *Foley v. Felrath*, 98 Ala. 176, 13 South. 485,
39 Am. St. Rep. 39; *Town of Cottonwood v. Austin &
Co.*, 158 Ala. 117, 48 South. 345. "In the case of sale
or return, the property in the goods passes to the buy-
er at once, subject only to a defeasance by a return of
the goods, unless it appears that the intention is that
the title shall remain in the seller, as where payment of
the price is made a condition precedent to the passing
of the property. If the buyer fails to return the goods
within the time limited or within a reasonable time, the
sale becomes absolute."—35 Cyc. 290.

"A contract of this nature constitutes usually a pres-
ent sale, subject to be defeated by a condition subse-
quent until return; therefore the title is in the vendee."
Mechem on Sales, vol. 1, § 677.

"A contract 'on sale or return' is an agreement by
which goods are delivered by a wholesale dealer to a
retail dealer, to be paid for at a certain rate, if sold
again by the latter, and, if not sold, to be returned."—
Story on the Law of Sales, § 249.

Speaking to the same subject, the court in the case
of *House v. Beak*, 141 Ill. 290, 30 N. E. 1065, 33 Am.
St. Rep. 307, says: "Such sales may be regarded as sub-
ject to a condition subsequent; that is, upon condition
that, if the goods are not sold, they are to be returned.
Therefore the property vests presently in the vendee, de-
feasible on the performance of the condition. If the

defendant disables himself from performing the condition, or fails to perform it within a reasonable time, his liability to pay the price fixed becomes unconditional, and the plaintiff may declare as upon an indebitatus assumpsit. * * * The buyer may make himself liable to pay the price fixed in the agreement by refusing to return the property upon demand made for it by the seller, but, if the seller does not want the property and makes no demand for it, it is none the less true that the buyer will become liable to pay the price fixed, upon failing to return the property within a reasonable time."

We are of the opinion that the real transaction between D. M. Ferry & Co. and the retail merchants, under the agreed statements of facts, was that of "sale or return," as disclosed by these authorities and definitions. The retailer was to pay for the seeds not returned at a *certain price previously* fixed by the parties, and at a *certain time* (that is, when the "traveler calls"), and he had the option of returning seeds not sold. We deem a further discussion unnecessary, and indeed recognize that this opinion is doubtless of undue length, but we trust pardonable on account of the importance of the principles involved.

We have examined the cases relied upon by counsel for appellee (*Fleet v. Hertz,* 201 Ill. 594, 66 N. E. 858, 94 Am. St. Rep. 192; *Thornton v. Cook,* 97 Ala. 632, 12 South. 403), but the contracts there were not of a similar character, nor was there such a state of facts as that disclosed here, and are in no wise in conflict with the conclusion here reached. We therefore conclude that the transactions disclosed by this record, as appears from the agreed statement of facts, are not consignments, creating the relation of principal and agent, but are what are known as "sale or return," and that therefore the property vested in the retailer upon de-

livery, subject to be defeated by the condition subsequent. For the purpose of taxation, therefore, the seeds under the agreed statement of facts were the property of the retailer; and the appellant was not liable for such taxes.

The court below erred in giving the affirmative charge for the defendant and in refusing that asked by the plaintiff. The judgment of the circuit court is therefore reversed, and, as the cause was tried upon an agreed statement of facts, one will be here rendered in favor of the plaintiff, for the sum sued for.

Reversed and rendered.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.