G. A. Soden & Co. *v.* T. J. Wilkinson & Son.*

(Division B.   May 26, 1924.)

[100 So. 182.   No. 23913.]

1. SALES.   *"Contract of sale or return" defined.*
   A "contract of sale or return" is an agreement by which goods are delivered by a wholesale dealer to a retailer, to be paid for at a certain rate if sold again by the latter, and if not sold to be returned.

2. SALES.   *Transaction held to constitute contract of sale and return.*
   The facts in this case examined, and *held* to constitute a contract of sale and return.

*Headnote 1.   Sales, 35 Cyc, p. 290 (1925 Anno);   2.   Sales, 35 Cyc, p. 290.

Appeal from chancery court of Franklin county.
Hon. R. W. Cutrer, Chancellor.
Suit by T. J. Wilkinson & Son against G. A. Soden & Co. Decree of dismissal, and complainant appeals. Reversed, and judgment rendered.

*Reed, Brandon & Brandon,* for appellant.

We refer the court to the definitions copied from 35 Cyc., pp. 253-254. See also Note 86 on said page 254, distinguishing contracts of sale or return from contracts of bailment and consignment, such as appellee contends this was. See also 24 R. C. L., pages 425-429, subject Sales, sub-title "XX. Contracts of 'Sale or Return,' " sections 720, 721, 722, 723, 724, 725. The law as therein stated and illustrated applied to the facts in the instant case establishes clearly the proposition that the goods sold by Soden to Wilkinson were on "contract of sale or return."

The leading case on the subject of "Contracts of Sale or Return" appears to be that of *D. M. Ferry & Co.* v. *Smith Hall, Tax Collector,* reported with voluminous annotations and citation of authorities in Lawyers Reports Annoted, 1917B., pages 620-651, also reported in 66 So. 104, 188 Ala. 178.

With stronger facts and circumstances before us, we cannot escape the conclusion that the contract between Soden and Wilkinson was one of "sale or return," and that Wilkinson was liable to pay for all goods *not returned,*—regardless of whether he sold them or whether they were destroyed by fire. See, also, *House* v. *Beak,* 141 Ill. 290; *Jameson* v. *Gregory,* 4, — Metc. (Ky.) 363; *Ex parte White in re Neville,* Law Rep. 6 Chanc. App. 397; 2 Benj. on Sales (6 Am. Ed.), sec. 913, 794.

Without even the prominent notice given by Soden to Wilkinson to protect himself against loss by fire, Wilkinson & Sons would have been liable for the property that he did not return; for where goods are sold under a contract of sale or return, the title passes to the purchaser,

subject only to his right to return them within the specified time or a reasonable time. See 3 A. & E. Ency. Law (1 Ed.), 433; *Hotchkiss* v. *Higgins,* 52 Am. Rep. 534.

*L. A. Whittington,* for appellee.

The issue presented in this case is: Whether under the terms and conditions of the shipment of the jewelry by appellants to appellees and according to the dealings between the parties touching such shipment, there was a 'contract of sale and return' of such jewelry between them as contended for by appellants, or whether the jewelry had been consigned to appellees by appellants, wholesale jewelers of Chicago, Ill. If it was a contract of sale and return, then appellees would be liable for the account, since title was vested in them; if the goods were in effect consigned and treated as consigned, appellees would not be liable, since title was in appellants and no negligence shown against appellees.

By a careful consideration of the evidence in this case we submit to the court that we are unerringly led to the conclusion that this "unique plan" of appellants was nothing more than a consignment of goods to their customers.

The facts in the instant case are not the same or analogous to the facts in *Ferry Company* v. *Hall,* cited by appellants. We call the court's attention to the fact that in the above case it is recognized that for the purpose of evading certain statutes, defeating claims of creditors, and for other purposes, contracts have been made "involving such a confused jumble of the elements of both sale and agency that it is exceedingly difficult to determine their true character" and some "have been drawn with a view to having them construed as contracts of sale or agency, as might best suit the convenience or subserve the purposes of their framers." L. R. A. 1917 B, page 622; 1 Mechem on Sales, par. 46.

The rule laid down by Mr. Mechem is that: "In construing these anomalous instruments, courts look chiefly at the essential nature and preponderating features of the whole instrument, and not at the peculiar form of isolated parts of it," and looking to the essential features of the relationship between the parties in this cause, we find appellants offering to place a stock of jewelry in the store of appellee not selling a stock of jewelry to the customer but placing it in the store of the customer; appellants' money tied up, not the customer's; no responsibility assumed by the customer; and when shipping advising the customer not to pay any attention to the ninety days on memorandum, ignore that, don't ship the stock back to us but keep on selling it. Moreover, we find appellees just before ordering out the shipment sued for herein saying to appellants that your plan of handling 'being on consignment,' is attractive; and no denial of such understanding made by appellants." The court below listened to all the evidence in the case and applying the principle laid down above held from the facts adduced that the goods destroyed by fire had been consigned. We most respectfully submit to the court that the finding of the chancellor is abundantly sustained by the evidence in the case and should not be disturbed.

SYKES, P. J., delivered the opinion of the court.

This suit was instituted in the chancery court by the appellant, a corporation engaged in the wholesale jewelry business, to recover from the appellees an alleged balance due upon an account for the sale of jewelry by appellant to appellees. The amount sued for is nine hundred ninety-eight dollars and eight cents, with interest from October, 1921. If the appellees are liable, the amount is not questioned. The theory of the bill is that the jewelry was sold by complainant to defendants under what is called a contract of sale or return, and that title to these goods was in the appellees at the time they were de-

stroyed by fire while in possession of appellees. It is the contention of the appellees that the goods were shipped to them on consignment, and that they were the property of the appellant at the time of the fire, consequently appellees are not liable for their loss.

The single question therefore presented in this record is whether or not there was a contract of sale or return of the goods, or whether the goods were merely shipped on consignment to appellees. It was held in the lower court that it was a shipment on consignment, and therefore that appellees were not liable, and the bill was dismissed; from which decree this appeal is here prosecuted.

The complainant (appellant) and the defendants (appellees) carried on their negotiations entirely through correspondence. The record discloses this correspondence, and it is a question of law for this court to say what was the character of this contract.

Though the record indicates that these parties had had business relations before 1917, the written evidence of those transactions is not before the court. These relations were resumed in 1917. In November of that year the two Wilkinsons wrote Soden & Co. a letter stating that they wished to put in a nice line of jewelry, and requesting Soden to send them a list of goods. This request was complied with, and on November 19th these defendants filled in a written order for certain goods made out on a printed order blank form of the appellant. We quote the material part of this order as this constitutes the contract between the parties upon which all of their subsequent business was transacted. It reads as follows:

"Please ship express prepaid a stock of jewelry on memorandum, all not sold to be returned about January 4, 1918. The agreement is to pay only for the goods not returned."

In addition to this kind of an order blank, it was the custom of the appellant to inclose with each shipment of

jewelry a self-addressed postal card to be signed by the consignee, which reads as follows:

"Jewelry shipped ——— [date to be filled in] received. All not sold is to be sent back to you. Payment is to be made only for what is not returned."

Postal cards of this character relating to the shipments in suit were duly signed by these defendants and returned to the complainant.

Advertising matter printed on the letters of the appellant have also to be considered. Under the title "Our Plan" is printed:

"We put a stock of jewelry into the merchants store. . . . It is shipped in nice display trays, express prepaid. It is billed on memorandum at the net wholesale price, the merchant pays us, once in three months, for the jewelry sold. He ships the jewelry back for brand new stock at least once a year. He invests nothing. He pays only for what he does not return. He can ship the stock back and discontinue any minute."

On another letter, among other things, is printed:

"Our memorandum plan is unique. The customer invests nothing; his sales are made before he pays. All holiday stocks are filled and shipped expecting that about thirty-three and one-third per cent. is going to be sold. When the holidays are over we expect immediate remittance for all sales. Prompt settlements by all of our customers are absolutely necessary, owing to the enormous capital required to conduct our business."

With each shipment of goods was an itemized statement showing the amount of goods with the price, etc. Printed on these bills or statements at the top is:

"On ——— days memorandum."

On the bottom in red:

"When you accept these goods you assume all risks of loss by fire, theft, or otherwise, and must pay us in full for all that you do not return."

Also there was inclosed in each shipment a printed paper containing, among other things, the following:

"Enjoy your income. All memorandum goods are billed net, no discount. The net wholesale price of each article is found by ignoring the second figure below the line. For the price usually sold at read the figures above the line backwards."

Then follows, of course, the figures indicating the wholesale price and the price usually sold for by the retailer.

The two shipments in question were ordered by letters in January and November, respectively, in 1920. Our attention is called by the appellees to a letter written by them to the appellant during their business relations, in which the appellees referred to them as handling the goods on consignment.

It is also the contention of the appellees that the appellant did business in two ways—one its catalog way, and the other its memorandum way. That the catalog way was the sale of goods, while the memorandum way was only a consignment. It is unnecessary to discuss the catalog way, because the goods here were bought on the memorandum plan.

While the two shipments in question were not ordered on the regular blanks of the appellant, yet the course of dealing, beginning in 1917, as shown by this record, and various orders of appellees filled out on these order blanks, is conclusive evidence that the appellees were entirely familiar with the business methods of the appellant, with the stipulations contained on its letters, order blanks, and other advertisements, and that these two shipments were ordered in the same manner as were the others, and that the same contract existed as to them.

The question of whether there has been a sale or a consignment of the goods depends primarily upon the intention of the parties and the real nature of the transaction, rather than the language which the parties employed. A material question is whether or not the consignee acquires complete dominion over the goods with the right to sell them upon such terms and conditions as

he may see fit, and is bound to pay the consignor a stipulated price therefor. In such case it is usually held that the contract is one of· sale, even though the purchaser may have the right to return and receive credit for the unsold goods. 35 Cyc. 290 and 291; Mechem on Sales, vol. 1, section 46.

"A contract of sale or return is an agreement by which goods are delivered by a wholesale dealer to a retailer to be paid for at a certain rate if sold again by the latter, and if not sold to be returned." Story on Sales, section 249.

A very interesting case upon this subject is that of *D. M. Ferry & Co.* v. *Hall,* 188 Ala. 178, 66 So. 104 L. R. A. 1917 B, 620. The supreme court of Alabama very interestingly reviews the cases bearing upon this question. To this opinion there is also an exhaustive note.

In this case there was an order for certain goods and an agreement to return those not sold and an agreement to pay for those not returned. There was a price charged for these goods. These defendants had complete dominion over them. They had the right to sell them at any price they so desired. This contract is a much more simple example of a contract of sale and return than the one discussed in the Alabama case.

The decree of the court below will be reversed, and a decree will be entered here in favor of the appellant for the sum of nine hundred ninety-eight dollars and eight cents, with the legal rate of interest from October 25, 1921.

*Reversed, and judgment here.*