### FISHER v. EL PASO EGG PRODUCERS' ASS'N. (No. 1808.)

(Court of Civil Appeals of Texas. El Paso. Nov. 12, 1925. Rehearing Denied Dec. 3, 1925.)

**1. Monopolies ⬁17(2)—Marketing agreement, requiring each member of egg producers' association to sell and deliver all eggs produced by him to the association, held in violation of anti-trust laws.**

Marketing agreement, requiring members of egg producers' association to sell and deliver all eggs produced by them to association, and providing that agreement should be binding on producers as long as they produced eggs directly or indirectly, or had legal right to exercise control over egg production, or any interest therein, association not being incorporated under Acts 37th Leg. (1921), c. 22 (Vernon's Ann. Civ. St. Supp. 1922, arts. 14½k–14½yy), held a trust, and violative of Rev. St. arts. 7796, 7798, and 7799.

**2. Monopolies ⬁17(2)—Marketing agreement held to constitute a trust and not an agency.**

Marketing agreement, whereby egg producers' association agreed to buy, and members agreed to sell and deliver to association, all eggs produced, with a penalty attached for failing to do so, association having power to mingle eggs with other eggs of like grade, quality, condition, and weight, pool for eggs to cover deliveries for each week, and to borrow on eggs delivered, held to constitute a trust and not a contract of agency.

Appeal from El Paso County Court, at Law; J. M. Deaver, Judge.

Suit by the El Paso Egg Producers' Association against John W. Fisher. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Goggin, Hunter & Brown and Jno. F. Weeks, all of El Paso, for appellant.

A. W. Norcop, of El Paso, for appellee.

WALTHALL, J. This suit was brought by the appellee, El Paso Egg Producers' Association, an unincorporated association of egg producers, to enjoin the appellant, John W.

Fisher, from selling any eggs owned by him or under his control to any person, firm, or corporation other than appellee, in violation of a contract attached to and made a part of the petition, and alleged to have been made with the appellee association, and to compel specific performance of his contract, and for damages alleged.

Appellant excepted generally and specially to the petition, the grounds of the special exception we need not here state. Appellant pleaded that the contract alleged and sought to be enforced by appellee, and to enforce which the injunction is prayed, is in violation of the statutes of this state and of the United States of America against trusts and trade combinations, and is in restraint of trade, and is especially violative of articles 7796, 7798, and 7799 of Revised Statutes of Texas, defining trusts, conspiracies against trade, and specifying acts and things mentioned, declared prohibited and illegal, and that appellee association was never incorporated under any law, and is not a corporation, and is without authority to act under the provisions of Vernon's Ann. Civ. St. Supp. 1922, c. 7A, tit. 2A, known as "Co-operative Marketing Associations."

Appellee, in reply, after general and several special exceptions, admitted that it has not been incorporated and has not secured a charter, but says that appellant executed the contract and acted under it, and knew that appellee had not incorporated, and that it was not contemplated that appellee would be incorporated until further affirmative action by its members, and that incorporation had been waived and postponed indefinitely, and that appellant consented to and acquiesced in the nonincorporation of appellee, and thereby waived the failure of appellee to incorporate, and is now estopped to urge the defense that appellee is not a corporation.

Appellee pleaded other matters, but in the view we entertain of the matters already stated as being conclusive of the one question presented, appellee's right to the injunction granted, we need not here state the further issues tendered.

While not specifically alleged in the pleadings of either party to the suit nor admitted by appellee, yet it is quite evident, from the contracts constituting appellee's organization as an association of egg producers, and the things in the contract agreed to be done by the association, and the things done as such association, appellee association was to be organized under chapter 22, General Laws of Texas, 37th Leg. 1921, now constituting title 2A, c. 7A, V. S. Sup. 1922, under which co-operative marketing associations may organize and operate, and under which, without quoting at length, terms are defined, purposes stated, powers and privileges granted, and, when organized thereunder, shall not be deemed to be a combination in restraint of

---

trade or an illegal monopoly, or an attempt to lessen competition or fix prices arbitrarily; nor shall the marketing contracts or agreements between the association and its members, nor any agreements authorized in thīs act, be considered illegal or in restraint of trade.

The act was passed as stated, in order to promote, foster, and encourage the intelligent and orderly marketing of agricultural products through co-operation, which products include the production and distribution of eggs.

The term "association," as used in the act, is defined by the act to mean "any corporation organized under this act." Briefly, so far as the matters presented here are involved, the act authorized the organization under the act of a nonprofit, co-operative association, without capital stock, such as the marketing agreement promulgated by the appellee here.

Appellant makes the contention that, the appellee association not having incorporated under the act above referred to, although more than a year had elapsed, and no charter was ever applied for, and no effort has been made to incorporate, for that reason appellee is not entitled to any of the benefits given by the act, and the appellee association, in undertaking to act under its marketing agreement, is in violation of the anti-trust statute, and refers especially to paragraphs 2, 11, 12, and 13, of the marketing agreement under which appellee is acting. The paragraphs referred to read:

"2. The association agrees to buy, and the producer agrees to sell and deliver to the association, all eggs produced by or for him in Texas during the years 1923, 1924, 1925, 1926, and 1927 (excepting eggs for hatching and for his own consumption). The association shall handle only the eggs of its members, and only upon the basis herein set forth."

Paragraph 11 reads:

"The producer shall have the right to stop raising and producing eggs, and to produce or raise anything else at any time at his free discretion; but, if he produces or raises any eggs during the term hereof, they shall all be included under the term of this agreement, and must be sold only to the association, subject to the reservations contained in paragraph 2 of this marketing agreement."

Paragraph 12 reads:

"12. Nothing in this agreement shall be interpreted as compelling the producer to deliver any specific quantity of eggs per year, but he shall deliver all the eggs produced, raised, or acquired by or for him, subject to such reservations."

Paragraph 13 reads:

"13(a). This agreement shall be binding upon the producer as long as he produces eggs directly or indirectly, or has the legal right to exercise control of any commercial egg production, or any interest therein, during the term of this contract. (b) If this contract is signed by the members of a copartnership,' it shall apply to them and each of them individually, in the event of the dissolution or termination of the said copartnership."

Appellee's petition and the evidence disclose that appellee, the El Paso Egg Producers' Association, is composed of various poultry and egg producers in Texas, and in the vicinity of El Paso, and having its principal office and place of business in El Paso, Tex., and of which association appellant was a member, and that the members generally and the managing members, particularly, of said association, from its organization and at the time of the filing of this suit, were acting together under its management and control and in promoting, performing, and carrying out the expressed purposes of the association as shown in its said marketing agreement, save and except appellant, Fisher, who, at the time of the filing of this suit, had refused to further act under said agreement in the disposition of his eggs, and was disposing of his eggs elsewhere than to appellee.

A "trust," under our statute (Rev. St. art. 7796) is defined:-

"A combination of capital, skill, or acts by two or more persons, firms, corporations or associations of persons, or either two or more of them for either, any or all of the following purposes."

Then follows the statement of seven purposes, the first of which reads:

"1. To create, or which may tend to create, or carry out restrictions in trade or commerce or aids to commerce or in the preparation of any product for market or transportation, or to create or carry out restrictions in the free pursuit of any business authorized or permitted by the laws of this state."

Is the marketing agreement of appellee in violation of the above provision of our statute? If it is, and, not being an incorporated body and exempt from the above as a co-operative marketing association under the provisions of our statute above referred to, it is a "trust," and its marketing agreement cannot be enforced.

[1] We have concluded that the marketing agreement of appellee discloses a combination of capital, skill, and acts of persons for the purpose of creating, and which does tend to create restrictions in trade in the preparation of a product for market, that of eggs, and does create and carry out restrictions in the free pursuit of the marketing of eggs in this state, a business authorized and permitted by the laws of this state. The natural tendency of any agreement to suppress the free pursuit in this state of any authorized business carries with it its own death wound, and will not be upheld by injunction. By the terms of the organization and marketing

agreements, the members of the association producing for the market in the vicinity of El Paso the product of not less than 16,000 hens, agree that the association shall buy and the producer shall sell and deliver "all eggs produced by or for him in Texas," during the years of the life of the agreement, and "must be sold only to the association," and "he shall deliver all eggs produced, raised, or acquired by or for him," and "this agreement shall be binding upon the producer as long as he produces eggs directly or indirectly, or has the legal right to exercise control of any commercial egg production or any interest therein," during the term of the contract, and except as to the reservations of eggs for hatching and his own consumption.

The selling agreement, we think, clearly evidences a restraint upon and forbids the producer by forestalling him by its provisions which, but for the agreement, would have been independent and competing in the free pursuit in obtaining the best prices for his own production of eggs, thus bringing the parties, in the disposition of their egg production, into an association or co-operative action, a trust under our statute. Gates v. Hooper, 90 Tex. 563, 39 S. W. 1079; T. & P. Coal Co. v. Lawson, 89 Tex. 394, 32 S. W. 871, 34 S. W. 919; Fuqua, Hinkle & Davis v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241.

The case of Texas Farm Bureau Ass'n v. Stovall, 113 Tex. 273, 253 S. W. 1101, by our Supreme Court, is very similar to the case at bar; was organized under the Co-operative Marketing Act above referred to. The purpose of the suit there, as here, was to enjoin a member of the association from selling and delivering his crop of cotton to parties other than the association, in violation of the marketing agreement. The character and expressed purpose of the organization in that case is so similar to the expressed purposes of the co-operative agreement here as to make the case conclusive of most of the issues presented here; one striking difference there and here, however, being that the plaintiff there, and appellant on appeal, was incorporated as is expressly provided by the act, and is thus exempt by express provision of the act from the trust statute, while here, appellee is not incorporated, contrary to the expressed contemplation of the membership as disclosed by the record. The opinion in the case by Chief Justice Cureton, relieves us from an extended discussion of several questions presented here.

[2] Appellee in the case at bar insists that it is only a selling agency for its members, and for that reason is not a trust nor in violation of our trust statute. In that contention we do not concur. In the marketing agreement it is provided, "The association agrees to buy, and the producer agrees to sell and deliver to the association, all the eggs," etc., and provides a penalty as agreed damages for failing to do so. It is agreed that the association may pool or mingle the eggs with eggs of like grade, quality, condition, and weight, pools for all eggs to cover deliveries for each week, and provides that the association may borrow what it can upon the eggs delivered. In the case cited, Chief Justice Cureton said:

"It is difficult to lay down any single rule or test as to what will or will not constitute a sale of property. The case next cited contains many annotations on the subject, but in reality each contract must be construed in accordance with its own terms and with the manifest intention of the parties. See D. M. Ferry & Co. v. Hall, 188 Ala. 178, 66 So. 104, L. R. A. 1917B, 620, and notes. In general it may be said that, if it is manifest from the contract, that it was intended title should pass and the price be paid, the transaction constitutes a sale. According to the contract before us, the association agrees to buy, and the grower agrees to sell and deliver cotton to the association. Paragraph 2. By paragraph 18(b) of the agreement, 'the parties agree that this is a contract for the purchase and sale of personal property.' Other provisions in the contract show that it was the manifest purpose of the parties that the association should take title to the cotton delivered to it, and that defendant in error [Stovall] should lose all dominion over it. The cotton is to be delivered to the association without any provision for its return; the association is authorized to have the cotton handled, processed, and stored; it is authorized to borrow money on, pool, and sell the cotton; in other words, the association is authorized to exercise all acts of ownership over the cotton after its delivery, subject only to the method prescribed for determining its price."

The court held that while the association is created primarily for co-operative purposes and not for profit lends color to the theory that it is an agency contract, but that, when the statute is examined and the contract analyzed it is quite plain that in its essential aspects the contract is not one of agency as that term is ordinarily understood. Had appellee association perfected an incorporation as the act itself, under which clearly it was organized and as its contracts show its members contemplated it should do, it would have been relieved of the questions presented. Not having incorporated, we think its contract is in violation of our trust statutes, and its marketing agreement cannot be enforced.

While other propositions and counter propositions are presented, we think the matters discussed control the disposition to be made of the case.

For reasons stated, the case is reversed, the injunction granted by the trial court is dissolved and refused.