**NELSON et al. v. GUARANTY TRUST CO.**
**No. 6607.**

Circuit Court of Appeals, Ninth Circuit.

Aug. 1, 1932.

H. B. Rigg, Nat. U. Brown, and C. W. Halverson, all of Yakima, Wash., M. M. Moulton and Charles L. Powell, both of Kennewick, Wash., for appellants.

D. H. Bonsted and V. O. Nichoson, both of Yakima, Wash., for appellee.

H. A. La Berge, Joseph C. Cheney, and Elwood Hutcheson, all of Yakima, Wash., amici curiæ.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

ST. SURE, District Judge.

K. Lane Johnson, bankrupt, was engaged in a general fruit business in the state of Washington, particularly in the Kennewick district. He bought and sold fruit; dealt in growers' supplies; marketed crops on straight consignment; marketed fruit under the plan known as pooling; crated, packed, and stored fruit for market; owned and operated fruit farms. He financed growers, and a large part of his business was borrowing money and buying supplies on credit to advance to growers with the understanding that their fruit, when matured, would be delivered to him to be handled either on a factorage basis or under an agreement giving him power to elect to market all fruit so delivered under the pooling plan. The basic principle of this pooling plan is identical with that of co-operative marketing. Under such plan the fruit received by Johnson was commingled and marketed during the season, with an agreement to pay the growers on the basis of the average market price on fruit so handled by him during the year.

Appellants, Nelson and Kaas, were fruit growers. Each had a contract with Johnson providing for marketing his crops under the pooling plan. Nelson's contract was in writing, and Kaas' was oral.

On May 24, 1929, Johnson assigned all of his assets to the Guaranty Trust Company of Yakima for the benefit of his creditors. Adjudication in bankruptcy followed, and the trust company was thereafter elected trustee. The trustee has on hand $29,233.09 received by it from pooled apples sold by bankrupt, and also sold by it as assignee. Appellants petitioned to recover what each claimed as the balance due to him of his proportionate share of said fund. Nelson asked for $553.18, and Kaas for $633.67. The matter was heard before the referee in bankruptcy, who denied the petitions of appellants, holding that the growers had no rights of preference. Upon petition for review, the District Court confirmed the findings and conclusions certified by the referee, and appeal was taken to this court.

Appellee moves to dismiss the appeal upon the ground that same has not been allowed by order of this court as required by section 24b of the Bankruptcy Act, 11 USCA

§ 47(b). This proceeding is a "controversy arising in bankruptcy proceedings" for which appeal is provided in paragraph a of the same section.

Under section 24a, 11 USCA § 47(a), a controversy arising in bankruptcy is reviewable on appeal, and such an appeal does not have to be allowed by the appellate court. It was held in the case of Taylor v. Voss, 271 U. S. 176, 180, 46 S. Ct. 461, 463, 70 L. Ed. 889, that: " 'Controversies arising in bankruptcy proceedings' referred to in section 24a, include those matters arising in the course of a bankruptcy proceeding, which are not mere steps in the ordinary administration of the bankrupt estate, but present, by intervention or otherwise, distinct and separable issues between the trustee and adverse claimants concerning the right and title to the bankrupt's estate."

Under this definition, the matter in dispute in this case is undoubtedly a "controversy arising in bankruptcy proceedings," as distinguished from "proceedings" of a court of bankruptcy, and is therefore appealable as a matter of right under section 24a of the Act.

"Proceedings" in bankruptcy referred to in section 24b have been defined by the Supreme Court in the case of Taylor v. Voss, supra, at page 181 of 271 U. S., 46 S. Ct. 461, 463, as "those matters of an administrative character, including questions between the bankrupt and his creditors, which are presented in the ordinary course of the administration of the bankrupt's estate."

An appeal involving "proceedings" in bankruptcy must be allowed by the Circuit Court of Appeals unless it relates to one of the three matters specified in section 25 (11 USCA, § 48), viz. (1) a judgment adjudging or refusing to adjudge a defendant bankrupt; (2) a judgment granting or denying a discharge; and (3) a judgment allowing or rejecting a debt or claim of $500 or over, any of which questions may be appealed without the allowance of the appellate court. Baer v. Security Trust Co. et al. (C. C. A.) 33 F.(2d) 861. See, also, 8 Remington on Bankruptcy, p. 122, § 3740, p. 138, § 3757, and September, 1930, Supplement thereto; Collier on Bankruptcy, 1930, Supplement, p. 220 et seq.; In re Weissman (C. C. A.) 19 F.(2d) 769, 53 A. L. R. 644; Handlan v. Bennett (C. C. A.) 51 F.(2d) 21.

Counsel cites Standard Sanitary Mfg. Co. v. Momsen-Dunnegan-Ryan Co. et al., 51 F.(2d) 684, 685, decided by this Court. It is not in point. As said by Judge Wilbur,

author of the opinion, the appeal was "apparently taken by reason of appellant's fear that the order of adjudication in bankruptcy will be conclusive in a subsequent action brought by the trustee to determine the question of preference. The order does not have that effect. In re Sears, Humbert & Co. (C. C. A. 2) 128 F. 275."

Briefly stated, the facts as shown by the certificate of the referee and supported by the evidence, follow in narrative.

Nelson entered into a written agreement with Johnson, whereby he appointed Johnson his agent in the marketing and selling of all of certain described fruit. Johnson agreed to use his best ability, experience, and judgment in the marketing and selling of said fruit, and was to receive a certain commission per box for selling it, in addition to which Nelson agreed to pay for boxing, loading, labeling, warehouse storage, and brokerage actually paid out by Johnson. It was agreed that all remittances should be made to Johnson, he to deduct all of his compensation for his services; that Johnson should have the entire and exclusive charge of handling and marketing and selling the fruit. Nelson further authorized Johnson to pool his fruit with the fruit of others of like grade and quality, to sell it in such pools, and to account for it at the pool price.

Kaas also marketed his fruit through Johnson. His agreement with Johnson was oral. The evidence shows that Kaas' agreement was no different from Nelson's, except it was agreed that his apples were not to be sold until the price was suitable. This agreement, however, pertained only to Kaas' "fancies" and "extra fancies," his "C" grades being marketed under an agreement similar to that of Nelson's. The apples of growers in the class with Kaas were commingled in the pool, as was Nelson's, and it was not possible for Johnson to sell for Kaas the identical apples which he delivered. Johnson borrowed money on the fruit which was in the pool, and used it for the purchase of apples, and such apples went into the pool. The money which he received from the sale of all apples was commingled and was used indiscriminately for all purposes.

Both Nelson and Kaas had dealt with Johnson before, and had also dealt with other concerns that pooled their fruit. Both were familiar with Johnson's way of handling the fruit, except that Kaas did not know how Johnson handled his funds or how he financed his business. Nelson had been marketing fruit since 1919; he sold through different

organizations, and most of them pooled the fruit.

Johnson had three farms of his own, upon which he raised fruit, which was deposited in the pool. All apples delivered to Johnson, regardless of whose they were or what the special agreement regarding them might be, were commingled and lost their identity in the pool.

"There were a large number of other growers who had similar agreements, some of which were written and some oral," says the referee. And in their opening brief, counsel for appellants say, "It was stipulated at the hearing that all the claims represented by counsel who appeared for appellants Nelson and Kaas, should be bound by the decision upon these two, which were typical of the remaining petitions." Appellants therefore do not constitute all of the individuals who delivered fruit to Johnson, which was commingled, confused, and marketed with theirs. The record shows that there were growers holding written contracts; growers who delivered their fruit to the bankrupt under an oral contract, the only terms of which were that the growers authorized the bankrupt to pool their fruit with other fruit of like grade and quality; and growers who delivered their fruit to the bankrupt to be sold at such price and at such times as the grower should designate.

The record further shows that during the season of 1928–29, there were shipped from Kennewick district 132,065 boxes of apples, all of which were marketed through the pooling plan; that out of that number the Kennewick growers contributed 72,791 boxes, and Johnson contributed 59,274 boxes. There was credited upon Johnson's books as the net return from the sale of all apples $158,014.33, and upon the pooling basis there was credited on the books to the growers in the Kennewick district $86,880.40, and there was credited to Johnson for the apples delivered by him $71,133.93. While the total proceeds of all the apples in the Kennewick pool amounted to only $158,014.33, Johnson actually advanced to the growers during the same year in cash and supplies $210,218.53. In other words, Johnson put into the Kennewick district $52,204.20 more than he received.

In his conclusions the referee found that there was no wrongful commingling of goods on the part of Johnson; that such commingling was with the knowledge and consent of the growers; that the growers knew the practice which Johnson and other fruit dealers

followed; that, in pooling, the identity of each grower's apples was lost; that the apples grown on Johnson's farms and apples which he purchased were commingled with those of the growers; that neither the apples nor the proceeds of any individual grower could be traced; that the relation of debtor and creditor existed between the growers and Johnson; that under the decisions of the Supreme Court of the state of Washington the funds in the hands of a factor were not a trust fund; that the growers had enabled Johnson to secure credit because of the manner in which the apples were placed in his hands, and that Johnson had committed no wrongful act, but had followed the general custom of apple dealers who pooled the fruit; that therefore the growers did not have a preference, but were classed as general creditors.

Appellants took and reserved exceptions to the ruling of the District Court confirming the order of the referee, which included exceptions to each and every finding of the referee.

The sole question for our decision is whether the facts and circumstances of the pooling transaction show a contract of sale or an agency.

The marketing plan known as pooling is an important instrumentality in the state of Washington, as well as in other parts of our country. As stated in the brief of amici curiæ, it is a plan devised for the purpose of providing an orderly marketing of agricultural products to prevent the flooding of the market by the shipping at harvest time, and when producers become financially pressed.

Fundamentally back of this marketing idea is the necessity of the marketing instrumentality's being able to finance the growers to a large extent during the growing season, thereafter preparing the produce for market and keeping it in condition until the market is ready to absorb it, and paying shipping charges. This means that the instrumentality must be able to borrow money to obtain supplies, such as spray, boxes, paper, nails, labels, washing machines, wiping machines, grading and packing machines, and have packing sheds and a marketing organization. In order that the instrumentality shall be successful, creditors must be able to deal with it with safety. Creditors necessarily and properly do rely upon the instrumentality as being a responsible legal entity with which dealings can be had.

All of the witnesses before the referee

who have practiced and are familiar with the plan testified that the pooling method of marketing is for the purpose of procuring an average price to pay all growers, and to protect them from loss they might otherwise incur. For instance, if a carload of pooled apples was destroyed, the loss would be pro-rated. The object of the plan is to equalize the return and to simplify the handling of the commodity, so that all growers receive the same price for like grade, quality, and size. The money as received goes into the general bank account, and there is no account showing whose apples produced the money. The money received is used for paying general operating expenses, advances to growers, purchases of fruit, and other obligations. Contributors to the pool are paid from the general fund.

At no time was there a pool in the sense of an aggregate of things put together in the common mass, for example, like a warehouse full of wheat. At no time were all the apples which were credited on Johnson's books to himself and to growers actually in Johnson's possession. They were always coming in and going out. At one and the same time apples would be coming in, being put in a market-able condition, being shipped for sale, shipped for storage, and being sold. It was a continuous stream, fed by deliveries by growers to Johnson, apples grown by Johnson, and by Johnson's purchases from others. From all any one knows, or can know, all of appellants' apples were sold long prior to the assignment or bankruptcy. All that can be established is that a certain number of boxes of apples of certain sizes came from the Kennewick district.

The referee in bankruptcy and the District Court followed the rulings of the Supreme Court of the state of Washington in deciding the case. It was proper to adopt the policy of the state law. Mishawaka Woolen Mfg. Co. v. Westveer (C. C. A.) 191 F. 465, 466.

The evidence clearly shows that appellants delivered their fruit to the bankrupt to market for them under the pooling plan, and that the bankrupt was to account for same at the pool price. This constituted a sale and the passing of title. The growers delivered the fruit without reserving to themselves the rights of control and termination. Under such an agreement the bankrupt had the right to obtain credit upon the apples shipped; the relationship of debtor and creditor existed between the bankrupt and appellants; there was no wrongful commingling of apples or

funds, because the pooling contract permitted that very thing; there was such a commingling of fruit and proceeds as to render identity of either impossible, and there was therefore no trust fund created. This view is supported by Winans v. Brue, 140 Wash. 56, 248 P. 62; Heidelbach v. Campbell, 95 Wash. 661, 164 P. 247. See, also, Zurich General A. & L. Co. v. Safe-T-Kros Drug Co., 91 Ind. App. 130, 170 N. E. 351; Ferry & Co. v. Hall, 188 Ala. 178, 66 So. 104, L. R. A. 1917B, 620; Mishawaka Woolen Mfg. Co. v. Westveer (C. C. A.) 191 F. 465; In re Ballard (D. C.) 279 F. 574; Laflin & R. Powder Co. v. Burkhardt, 97 U. S. 110, 24 L. Ed. 973; Potter v. Mt. Vernon Mill, 101 Mo. App. 581, 73 S. W. 1005; Savage v. Salem Mills, 48 Or. 1, 85 P. 69, 10 Ann. Cas. 1065; Butterfield v. Lathrop, 71 Pa. 225; Roberts v. J. & H. Goodwin, Ltd. (Wash.) 7 P.(2d) 8; Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S. W. 1101; Kempe v. Johnson, 57 Wash. 154, 106 P. 619.

Affirmed.