94 So.2d 380

Edgar L. ARM I et al.

v.

Dorothy HUCKABEE.

6 Div. 981.

Supreme Court of Alabama.

March 7, 1957.

Rehearing Denied April 25, 1957.

92

Jos. S. Mead, Birmingham, for appellants.

Rogers, Howard & Redden, Birmingham, for appellee.

STAKELY, Justice.

This is a suit by a tenant (Dorothy Huckabee) of an apartment house in the City of Birmingham against the owners (man and his wife, Edgar L. and Emota Armi) and their rental agent (Frank B. Clark and Company, a corporation) for damages alleged to have been sustained by her as the result of a fire which burned a portion of the apartment house. The fire was alleged to have been the proximate consequence of negligence of the defendants and their agent in operation of the premises and in the heating equipment therein installed and maintained.

The issues were presented in three counts, Counts III, V and IX. In substance, omitting the allegations as to damages, Count III alleges that on the 14th day of November 1952 the defendants owned, operated or controlled an apartment building known as the Cordelle Apartments located on to wit 1415 13th Street South and to wit 1418 13th Place South in the City of Birmingham, Jefferson County, Alabama. It was further alleged that the defendants owned or controlled the heating system in said apartment building for a long time prior to the 14th day of November 1952 and that the defendants owned or operated such heating system for the furnishing of heat and hot water to tenants of said apartment building. It was further alleged that the defendants did on to wit the 14th day of November 1952 negligently operate said heating system and as a proximate consequence of such negligence the apartment building caught fire and burned and plaintiff was greatly injured and damaged in this: * * *.

Count V varies somewhat from Count III in that its allegations show that the defendants had agreed prior to and on said date (the 14th day of November 1952) to furnish heat and hot water to the plaintiff and to operate the apparatus used in the furnishing of heat and hot water to the plaintiff in a reasonably safe manner. It was further alleged that the defendants on said date negligently failed to operate the apparatus used in furnishing heat and hot water in a reasonably safe manner and it was further alleged that as a proximate consequence of said negligence great quantities of smoke and heat entered said building and the apartment of the plaintiff in said building and the plaintiff was greatly injured and damaged in this: * * *.

Count IX varies from Counts III and V in that it alleges that on said date (the 14th day of November 1952), the defendants controlled and maintained an area on a lower level of said building where was located the apparatus for the furnishing of heat and hot water to the tenants of said building, which the defendants had agreed to furnish plaintiff. It was further alleged that on said date, the defendants had negligently allowed said area to become in an unsafe condition in that defendants had negligently allowed great quantities of rubbish and combustible material to accumulate near and about said heating apparatus and as a proximate consequence of said negligence said rubbish and combustible material caught fire and the plaintiff was injured and damaged in this: * * *.

Demurrers which were filed separately and severally to the foregoing counts were overruled and thereupon the defendants filed a plea in short by consent, the general issue with leave to give in evidence any matter which if well pleaded would be admissible in defense of the action to have effect as if well pleaded.

One of the defenses interposed by the defendants to the foregoing counts and un-

der the plea in short by consent was based upon a written lease entered into between the appellants Armi and their agent Frank B. Clark and Company, a corporation, on the one hand and the appellee on the other. We set out the pertinent portions of this lease as follows:

"Services 10. The Lessor agrees, without further charges to the Lessee, to furnish during the proper season and during reasonable hours a reasonable amount of heat, as the Lessor may determine, for heating said premises, and will furnish janitor service for the public halls and corridors, but the Lessor shall in no event be liable for damages for stoppage of elevators or heat or light or water or janitor services, or for the machinery or appliances pertaining to the building breaking or getting out of order, or being out of repair. The Lessor shall, in no event be liable for any damage for failure to furnish heat, light, water, elevator or janitor service, or for injury to any person or property caused by any defect in the heating, gas, electrical, water or elevator apparatus. The Lessor (including Lessor's Agents or employees) shall in no event be liable to any person for any damages of any nature which may occur at any time on account of any defect in said building, premises, improvements thereon, or appurtenances thereto, whether such exists at the date of this lease or arises subsequently thereto, or whether such defect was known or unknown at the time of such injury or damage, or for damages from wind, rain or other cause whatsoever, all claims for such injury or damage being hereby expressly waived by Lessee.

"Storage 12. All personal property placed in the leased premises, or in the store rooms or in any other portion of said building or any place appurtenant thereto, shall be at the risk of Lessee, or the parties owning same, and Lessor shall in no event be liable

for the loss of or damage to such property or for any act or negligence of any employee or of any cotenants or servants of tenants or occupants, or of any other person whomsoever in or about the building."

At the conclusion of the evidence the defendants asked written charges, some of which were given and some refused.

The issues were submitted to the jury and there was a verdict and judgment in favor of the plaintiff and against the defendants for $4,500. Motion for a new trial was filed and overruled by the court. Thereupon this appeal followed.

I. At the time this action was commenced and at the time the apartment was leased to appellee, Mr. and Mrs. Armi were residents of California and domiciled there and service was sought to be had on them by service upon the Secretary of State of Alabama under an act appearing in the General Acts of Alabama of 1953, p. 347 and set forth in the Pocket Part of the Code of 1940, Title 7, as § 199(1). Affidavit was made by the attorney for the appellee that the cause arose "from the doing of business" by the Armis in Jefferson County by the ownership and leasing of the apartment to appellee and that the Armis were residents of California. Thereafter service was sought to be had pursuant to the provisions of the aforesaid act. The Armis (appellants) filed separate motions to quash the service based upon the claim that they were not doing business in Jefferson County by owning and leasing the apartment in such sort as to subject them to the service of process attempted to be had under the aforesaid act. Under a stipulation it was agreed that Edgar L. Armi and Emota D. Armi owned an apartment building containing twenty units known as the Cordelle Apartments, also an apartment consisting of twelve units known as the Belle Clair Apartments and also the Warwick Manor Apartments consisting of twelve units, all located in Birmingham, Alabama, and all rented to the public by Frank B. Clark and Company, a corporation, as rental agent.

There is no merit in the motion to quash the service upon the Secretary of State. In construing § 199, Title 7, Code of 1940, this court has held it to be a valid exercise of power by a state because of its right to regulate the use of its highways by nonresidents, to declare that the use of the highway by the nonresident, without procuring a license, may by statute be treated as the equivalent of the appointment by him of the secretary of state as an agent upon whom process in such a case may be served. Ray v. Richardson, 250 Ala. 705, 36 So.2d 89; Peters v. Tuell Dairy Co., 250 Ala. 600, 35 So.2d 344. See Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 466, 57 A.L.R. 1230, 1239. The principle which we have stated as being applicable to § 199, Title 7, Code of 1940, is equally applicable to the aforesaid act which appears as § 199(1), Title 7, Pocket Part of the Code of 1940.

The ownership and operation of apartment buildings for the rents and profits accruing therefrom is a business and we think that when a nonresident undertakes to operate apartment houses with a considerable number of apartment units therein, as in this case, such a business in the State of Alabama, is amenable to the public policy of the state as set forth in the General Acts of Alabama of 1953, p. 437 and set forth in the Pocket Part of the Code of 1940, Title 7, as § 199(1), which provide for substituted service. Miller v. Swann, 176 Misc. 607, 28 N.Y.S.2d 247.

II. By various assignments of error it is seriously insisted by the appellants that they were entitled to the affirmative charge. The basis for this contention has two aspects. In accordance with the brief of counsel we shall first consider the contention that the lease contained a release of liability for the negligent conduct which is made the basis of the action. At the outset we call attention to the fact that this is a suit for alleged personal injuries alleged to be the result of negligent conduct and not a suit for the loss of personal property alleged to be the result of negligent conduct. In this connection two paragraphs of the lease, Sections 10 and 12, which we have heretofore set out, must be carefully analyzed. Paragraph 10 is designated "Services" and paragraph 12 is designated "Storage." We want to make it clear that these words should not be given greater import than as a help in locating the subject-matter in the lease. This court has oftentimes held that the construction of a contract cannot be governed by the name by which it is called. Steele v. State, 159 Ala. 9, 48 So. 673; D. M. Ferry & Co. v. Hall, 188 Ala. 178, 66 So. 104, L.R.A.1917B, 620. However, upon a careful consideration of paragraph 10 as a whole, we think that it deals entirely with the stoppage or failure of certain specified services, defects in the building, appliances and appurtenances or "for damages from wind, rain or other cause whatsoever." It does not seem to us that in this paragraph it is intended to provide that the defendants are exonerated from liability for personal injuries resulting from negligent conduct. Cairnes v. Hillman Drug Co., 214 Ala. 545, 108 So. 362.

Paragraph 12 appears to us to relate entirely to the risk of the lessee in storing or placing personal property in the premises. This paragraph undertakes to exonerate the lessors or their agents from liability for any loss or damage to such property as the result of any act, negligence or conduct of any person. There is no mention in this paragraph of damages for personal injuries.

The appellants insist, however, that the case of Life & Casualty Insurance Co. of Tennessee v. Porterfield, 239 Ala. 148, 194 So. 173, 175, is an authority against the position which we have here taken. We do not agree. The case at bar does not involve a claim for damages for the loss of personal property and this factor was the basis of the decision in the Porterfield case, when it was decided that the words " 'any person whomsoever' " included the landlord and his agent or servants. It is true that in

the Porterfield case the complaint listed some items of damage for personal injuries, but this does not appear to us to bear upon the decision of the court in that case and was certainly not the subject of any discussion or comment by the court. From the opinion the court regarded the case in reaching its decision as one seeking a recovery for loss of personal property and found that Count D of the complaint was predicated upon a defective heating system, one of the expressly exempted matters covered in what is paragraph 10 of the lease in the case at bar. The court further found that Count A of the complaint proceeds upon the theory that the cause of the fire was due to the negligent operation of the heating system by the defendant's servants or employees. The court said that these matters were within the provisions of the lease, which appear as paragraph 12, storage, in the case now under consideration. The Porterfield case holds that the contract in that case should be strictly construed in favor of the tenant, which does not mean, however, that its plain words should be rejected. To summarize, we do not consider that the Porterfield case supports the appellants' contention that the general charge should have been given by the court by reason of the exculpatory clauses contained in the lease here under consideration.

■ Considering now the second aspect relating to the assignments of error under discussion, it is clear in the light of the scintilla rule, coupled with the jury's duty to determine the truth from the evidence given before them, that the issues of fact under each count of the complaint were properly submitted to the jury for determination. For example, tendencies of the evidence show that the basement area was about 30 feet wide and 35 feet long. There may have been some variation in the testimony in this regard. Considering this physical layout, based upon the minimum area, which the jury would be free to find, tendencies of the evidence showed that along one end of this basement area were bins or compartments about six feet in depth and on the opposite end of the basement was the boiler about two feet from the west wall and extending about ten feet in length. This would leave an open area of approximately seventeen feet between the boiler or furnace and the bins on the opposite side. The testimony of the Captain of the Fire Department tended to show that located within this area he found several truck loads of materials which he considered to constitute a fire hazard. Also, according to the testimony of the janitor, Sharp Prater, he, the janitor, piled the ashes or coals along the wall as he cleaned out the furnace in the process of firing. The Captain of the Fire Department gave notice for the hazardous condition to be cleaned up. This inspection to which we have referred was about ten days prior to the fire. There is no testimony that this was done. In fact, the only affirmative testimony was by the janitor to the effect that he did not remove anything from the basement. There was some conflict in the testimony in this regard but, of course, the jury were free to reconcile such conflicts in the evidence.

Tendencies of the evidence negative the possibility of fire originating in the wiring or electrical apparatus or from ignition of any natural gas. We think the evidence shows that the fire was well under way before any electrical failure occurred or before any break in the gas line in the basement. To the contrary, there was testimony that the break in the gas lines occurred after the fire department arrived and there was testimony that the electrical failures occurred after the building had filled substantially with heat and smoke. It seems to us that in this situation the jury was free to make the finding that the materials constituting the fire hazard were still in the basement at the time of the fire and this combined with the shoveling of the hot ashes from the fire box along the wall in this area was a basis for the jury to conclude that these factors combined to produce the fire which without question resulted in the plaintiff's injury and damage.

III. The appellant urges that the court was in error in overruling the motion to set aside the verdict on the ground of excessiveness. We do not agree with this contention. The testimony shows that Mrs. Huckabee was trapped in her apartment by reason of heat and smoke generated by the fire. In fact it was necessary for her to be taken out of her apartment through a window in her apartment on a ladder placed against the wall by a fireman. The testimony tends to show that as a result of exposure to the smoke and heat she has suffered since the time of the fire with acute bronchitis and has become highly nervous. The bronchitis is accompanied with pain and coughing together with itching of the skin. Tendencies of the evidence also show that her bronchitis has become chronic. On one or two occasions while she was testifying she broke down and cried and the court was forced to suspend proceedings until she could regain her composure. There was a motion for mistrial on account of this situation which the court overruled, which, of course, was a matter within the discretion of the court. As stated the court overruled the motion to set aside the verdict as being excessive and this court has held that this court will not disturb a verdict on the ground of excessiveness where the trial court has refused to disturb the verdict, unless it is so excessive as to indicate passion, prejudice, corruption or mistake. Montgomery City Lines, Inc., v. Davis, 261 Ala. 491, 74 So.2d 923. And this court has further held that the correctness of a jury's verdict is strengthened when the presiding judge refuses to grant a new trial. Simpson v. Birmingham Electric Co., 261 Ala. 599, 75 So.2d 111; Gulf, Mobile & Ohio R. Co. v. Sims, 260 Ala. 258, 69 So.2d 449. We do not feel authorized to set the verdict aside, especially in the face of the refusal of the trial court to do so after he heard the evidence and saw the plaintiff before him. Central of Georgia Ry. Co. v. White, 175 Ala. 60, 56 So. 574; Louisville & Nashville R. Co. v. Tucker, 262 Ala. 570, 80 So.2d 288.

It is our conclusion that there is no error in the record and the judgment of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.