**ELKHART ENGINEERING CORPORA-
TION, Appellant,**

v.

**DORNIER WERKE, Appellee.**

**No. 21411.**

United States Court of Appeals
Fifth Circuit.

April 13, 1965.

Albert W. Copeland, Montgomery, Ala., Vincent P. McCauley, Columbus, Ga., John C. Godbold, Montgomery, Ala., Godbold, Hobbs & Copeland, Montgomery, Ala., McBreen & Tobin, Chicago, Ill., of counsel, for appellant.

James Garrett, Montgomery, Ala., Rushton, Stakely & Johnston, Montgomery, Ala., of counsel, for appellee.

Before RIVES, WISDOM, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

Elkhart, a Wisconsin corporation, brought a diversity suit under 28 U.S. C.A. § 1332 against Dornier Werke, a corporation organized under the laws of the Federal Republic of Germany. Elkhart does no business in Alabama. Dornier Werke does no business in the United States except for the activity which gave rise to this suit. Service was had upon Dornier by serving the Secretary of State of the State of Alabama under the provisions of Title 7, § 199(1) of the Code of Alabama, the adopted federal law for service of process.[1] This provision of the Alabama Code permits service of process on the Secretary of State in actions against a non-qualifying, non-resident corporation accruing from any business or character of work done in the state. The District Court granted the motion of Dornier to quash the return of service of process and this appeal is from that order. See Rosenberg Bros. & Co. v. Curtis Brown Co., 1923, 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372, and 6 Moore's Federal Practice, § 54.12(1), p. 114, demonstrating appealability of the order.

The twofold question presented is whether service may be perfected (1) under the terms of the Alabama statute, and (2) in view of the due process requirements of the Fourteenth Amendment on Dornier, a foreign corporation not qualified to do business in Alabama, in a suit arising from the commission of a tort by Dornier during the conduct of a single business transaction within the state.

The relevant facts are not disputed. Elkhart purchased an aircraft from Dornier in Germany and agreed, it being the only aircraft of its type in the United States, that it would be available to Dornier for sales demonstration purposes. In September 1962 Dornier wrote Elkhart as follows:

"Since we are contemplating a demonstration of the DO 28 aircraft to American authorities, we should be very much obliged if you would assist our efforts by placing your aircraft at our disposal for this purpose. Demonstrations are planned to commence in the course of the next month, whereby the aircraft will be flown by one of our pilots."

Elkhart agreed to the request, and Dornier sent one of its master mechanics from Germany to Wisconsin, where the aircraft was located, to inspect it. He was joined there by one of Dornier's test pilots, and shortly thereafter its sales manager also arrived. The three spent about a week in Wisconsin, departing in October 1962, to carry out a series of demonstrations throughout the United States. In December 1962 the aircraft was flown by the test pilot to Ft. Rucker, Alabama where it was to be used for demonstration purposes. Dornier stated that the sole purpose of taking the aircraft to Ft. Rucker was to ascertain if sufficient interest existed in civil or governmental organizations for the purchase of similar aircraft. The plane crashed there while being demonstrated by the test pilot. The master mechanic was also present at the time, and the sales manager who had left earlier in the day returned to the scene immediately after the crash. The suit by Elkhart was for damage to the aircraft.

At the time of the crash Dornier had possession of Elkhart's aircraft, and it was being demonstrated for Dornier's own business purposes. However, on the

---

1. Rule 4(d) (7), F.R.Civ.P., and see S.S. Philippine Jose Abad Santos v. Bannister, 5 Cir., 1964, 335 F.2d 535.

motion to quash, Dornier contended that its presence in Alabama for this purpose was not sufficient to subject it to the jurisdiction of Alabama courts to answer for a tort arising out of the demonstration. This contention rested on the argument that Dornier was not doing business in Alabama at the time suit was filed within the minimum contracts or substantial connection with the state doctrine of International Shoe Company v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057; and McGee v. International Life Insurance Company, 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. The District Court was persuaded to this view. No procedural due process fault is alleged.

## I.

We must first dispose of the argument, which we deem to be implicit in Dornier's position, that § 199(1), supra, by its terms, is not a statutory base for service absent a series of business activities in the state amounting to continuity. Principal reliance to support this argument is placed on Mississippi Wood Preserving Co. v. Rothschild, 5 Cir., 1953, 201 F.2d 233, where we construed a Mississippi statute similar in terms to exclude service in a tort suit where the activities of the defendant within Mississippi, although the tort resulted from them, were few and sporadic. See also Davis-Wood Lumber Co. v. Ladner, 1951, 210 Miss. 863, 50 So.2d 615.[2] We will examine the Alabama statute in the light of this argument.

The Alabama law provides a statutory basis for service on non-resident corporations in three situations. First, jurisdiction may be acquired over a non-resident corporation which is transacting business in the state by serving the agent of the corporation appointed for that purpose, or if no agent is appointed, by serving the Secretary of State. Title 7, §§ 192,

193, Alabama Code. Second, the Alabama Non-Resident Motorist Statute provides that jurisdiction may be acquired over non-resident motorists in suits for torts committed on the highways by serving the Secretary of State. Title 7, § 199, Code of Alabama. And in Dealer's Transport Co. v. Reese, 5 Cir., 1943, 138 F.2d 638, we held that this statute applied to a non-qualifying non-resident corporation even where there was an express finding that the corporation was not doing business in Alabama. The third situation arises under the statute with which we are concerned, § 199(1). It is separate and distinct from §§ 192 and 193. It provides that non-resident, non-qualifying corporations which "do any business or perform any character of work or service" in Alabama may be served through the secretary of state in suits accruing or resulting from such business, work, or service. The statute does not speak in terms of transacting or carrying on business as is the case with §§ 192 and 193. On the other hand, service under §§ 192 and 193 is not limited to actions accrued or resulting from the particular business or work done in the state. In short, these statutes appear to serve separate functions and to apply in different situations.

Section 199(1) in pertinent part provides:

"Any non-resident * * * corporation not qualified * * * as to doing business herein, who shall do any business or perform any character of work or service in this state shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the secretary of state, or his successor or successors in office, to be the true and lawful attorney or agent of such non-resident, upon whom process may be served in any action accrued, accruing, or resulting from

2. The Mississippi cases on the subject are reviewed in Walker v. Savell, 5 Cir., 1964, 335 F.2d 536; and see Mississippi Chemical Corp. v. Vulcan-Cincinnati, Inc., S.D., Miss., 1963, 224 F.Supp. 11, aff. on appeal, Mississippi Chemical Corp. v. Hoechst-Uhde Corp., 5 Cir., 338 F.2d 663 (1964). These cases point to the narrow construction placed on the Mississippi statute.

the doing of such business, or the performing of such work or service, or relating to or as an incident thereof, by any such non-resident, or * * * its * * * agent, servant, or employee."

The Supreme Court of Alabama has equated § 199(1) with the Alabama Non-Resident Motorist Statute which of course, contains no requirement of "doing business" as a prerequisite to jurisdiction. Armi v. Huckabee, 1957, 266 Ala. 91, 94 So.2d 380. There service under § 199(1) was sustained over California residents whose connection with Alabama was through ownership of three apartment houses which were rented to the public by an Alabama real estate agent. The suit was for property damage resulting from a fire. But in Ex parte Emerson, 1960, 270 Ala. 697, 121 So.2d 914, service under the section on a Texas resident was quashed. He was sued for injuries sustained from the use of a medicine. The sales of the medicine in Alabama had been made by either independent contractors or purchasers from the defendant, and the court held that therefore the defendant had done no business nor performed any work or service in the state.

■ The construction of this section was once again before the Supreme Court of Alabama in New York Times Co. v. Sullivan, 1962, 273 Ala. 656, 144 So.2d 25; reversed on other grounds, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, and we think the question was there settled adversely to Dornier. Unlike the narrow construction placed on the Mississippi statute, supra, here the Supreme Court of Alabama stated that the scope of substituted service under this statute was as broad as the permissible limits of due process. And see also Calagaz v. Calhoun, 5 Cir., 1962, 309 F.2d 248, where the New York Times case on this point was followed. We thus construe the provisions of § 199(1) to mean that service of process may be perfected on a non-resident corporation in a suit claiming damages on account of a tort which arose out of a single business transaction in Alabama. Being of this view, we proceed to the federal constitutional question involved. This was the ground of the decision of the District Court.

## II.

■ Since the question presented involves federal due process, federal authorities are controlling. Pennoyer v. Neff, 1878, 95 U.S. 714, 741, 24 L.Ed. 565, established the proposition that the due process clause of the Fourteenth Amendment is violated when a court renders a personal judgment against a non-resident without having jurisdiction over him, and that jurisdiction may not be acquired by service of process upon a defendant outside the jurisdiction or by publication, absent assent in advance to such mode of service. This principle was modified in International Shoe Company, and McGee v. International Life Insurance Co., supra, into the rule that due process requires only that in order to subject a person to an in personam judgment, if he be not present in the territory of the forum, he have certain minimum contacts or substantial connection with it. The District Court, applying this principle to the undisputed facts, concluded that the single act of business embraced in demonstrating the aircraft failed to meet the test.

■■ We take a different approach to the question and hold that under the circumstances of this case, due process is not violated by subjecting a non-resident, non-qualifying corporation to the jurisdiction of a forum in which it has committed a tort in the performance of a single business transaction. Our reasoning begins with and centers around the commission of the tort in the State of Alabama. Since Hess v. Pawloski, 1927, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, the states have been permitted to exercise jurisdiction over non-residents, including corporations, for torts committed on the highways of the forum state under the so-called non-resident motorist statutes. And, as we have noted, whether a corporation was also doing business at the time is irrelevant to the exercise of

this jurisdiction. Dealer's Transport Company v. Reese, supra.

■ The principle of Hess v. Pawloski was recognized in International Shoe Co. v. Washington, where the traditional jurisdictional concepts of presence, consent, and domicile were replaced by the minimum contacts or substantial connection with the forum doctrine. The Hess case was treated as sui generis because of the nature of the acts involved and the circumstances of their commission. The court in the McGee case, supra, cited Hess v. Pawloski as standing for the substantial connection with the forum doctrine. In Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, the court spelled out the additional element that in every case where jurisdiction under this doctrine is claimed, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." This element likewise appertains to and is found in this type of tort case.

■ Jurisdiction being thus clear under the minimum contacts doctrine over suits for torts committed on the highway of a forum state, we must determine what extension may be made of the rule on its underlying reasoning. It has already been extended to include jurisdiction over non-resident, non-qualifying corporations in actions for torts committed within the forum state where process is served under the non-resident watercraft statutes. For example, in Tardiff v. Bank Line, Ltd., E.D.La., 1954, 127 F.Supp. 945, service on a British corporation under the Louisiana Watercraft statute, LSA–R.S. 13:3479, was sustained. Judge Wright reviewed the statute in the light of due process requirements and the minimal contacts doctrine of International Shoe and McGee, but relied on

Hess v. Pawloski, supra, and the analogy between the Watercraft statute and Nonresident Motorist statutes to find that the Louisiana statute did not offend "traditional notions of fair play and substantial justice." International Shoe, supra. This case involved an action for the negligent death of a Louisiana resident working as a ship repairman on the steamship of the British corporation at dock in New Orleans. In Goltzman v. Rougeot, W.D.La., 1954, 122 F.Supp. 700, a suit to recover for the negligent loss for a barge load of scrap metal, service was perfected on the non-resident defendant by serving process upon the Louisiana Secretary of State pursuant to the Louisiana Watercraft statute, supra. Judge Dawkins sustained the service, pointing to the similarity between the Watercraft statute and the Louisiana Non-Resident Motorist statute, LSA–R.S. 13:3474, 13:3475. He held that waterways and highways are arteries of commerce and that any difference was in degree, and insufficient for holding that the Watercraft statute violated due process of law. He noted that the states have a wide discretion in determining when and under what circumstances they will exercise their police power. See also Franklin v. Tomlinson Fleet Corp., N.D.Ill., 1947, 158 F. Supp. 850, and Frase v. Columbia Transportation Company, N.D.Ill., 1957, 158 F.Supp. 858, both sustaining service on a non-resident corporation under the Illinois Non-Resident Watercraft statute in the face of due process attacks.

The reasoning of this court in Sugg v. Hendrix, 5 Cir., 1944, 142 F.2d 740, is appropriate.[3] There a citizen of Mississippi brought suit in the District Court of Mississippi against a non-resident Louisiana corporation under a statute of the same type as § 199(1) of the Alabama Code with which we are concerned. The court noted that the Mississippi stat-

---

3. This case was decided prior to Davis-Wood Lumber Co. v. Ladner, supra; Mississippi Wood Preserving Co. v. Rothschild, supra; and the authorities listed in Footnote 2. The Mississippi service of process statute in question,

Title 10, § 1437, Miss.Code 1942, would probably no longer suffice under the Erie doctrine, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, to obtain jurisdiction in view of its subsequent narrow construction.

ute was similar in form and substance to the non-resident motorist statutes. The order of the District. Court quashing service was reversed. It appeared that the defendant was engaged in levee construction work in Mississippi and that plaintiff's injury arose out of that work. The court adverted to the non-resident motorist statutes, and took the view that these statutes were based on state police power over torts committed within the state. It was pointed out that a state's police power was not limited to making regulations for the safety of persons using the highway, but might be extended to other acts of non-residents within the forum jurisdiction involving activity of a character dangerous to life or property. The court took judicial notice of the fact that heavy construction work of the type being performed by the defendant was of that character.

This case comports with the American Law Institute rule, § 23, Restatement of Judgments, as follows:

"A court by proper service of process may acquire jurisdiction over an individual not domiciled within the State who does acts * * which are of a sort dangerous to life or property as to causes of action arising out of such act or such ownership, if a statute of the State so provides at the time when the cause of action arises."

From the foregoing authorities, it is clear that the principle of Hess v. Pawloski has been extended to cover suits arising out of activity within the state which is dangerous to life and property, even though only a single isolated transaction is involved. Moreover, there is substantial authority that a state may properly assert jurisdiction over any tort committed within its borders, regardless of whether the tort arises out of activity considered dangerous. In Developments in the Law: State Court Jurisdiction, 73 Harv.L.Rev. 909, 926 (1960), the following statement is made:

"There is little doubt that a corporation is amenable to state jurisdiction in a tort action even though it has carried on only isolated or sporadic activity within the forum state, so long as the alleged tort grew out of that activity."

The authors read the McGee case as giving "implicit constitutional approval" to statutes basing jurisdiction upon the commission of a single tortious act in the forum state. 73 Harv.L.Rev. at 1003. And in the following cases, jurisdiction based on the commission of a single tortious act was sustained without reference to whether dangerous activity was involved. Smyth v. Twin State Improvement Corp., 1951, 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193; Nelson v. Miller, 1957, 11 Ill.2d 378, 143 N.E.2d 673; Owens v. Superior Court, 1959, 52 Cal 2d 822, 345 P.2d 921, 78 A.L.R.2d 388; Peters v. Robin Airlines, 1953, 281 App. Div. 903, 120 N.Y.S.2d 1 (dictum). See also notes at 25 A.L.R.2d 1202, 78 A.L.R. 2d 397.

The rationale of in personam jurisdiction over a non-resident committing a tort in the forum state was well stated by Judge Learned Hand in Kilpatrick v. Texas & Pacific Ry. Co., 2 Cir., 1948, 166 F.2d 788, 791, a case involving a cause of action arising outside the state of the forum:

" * * * It is settled that, given the proper procedural support for doing so, a state may give judgment in personam against a non-resident, who has only passed through its territory, if the judgment be upon a liability incurred while he was within its borders. That, we conceive, rests upon another principle. The presence of the obligor within the state subjects him to its law while he is there, and allows it to impose upon him any obligation which its law entails upon his conduct. Had it been possible at the moment when the putative liability arose to set up a pie-powder court pro hac vice, the state would have had power to adjudicate the liability then and there; and his departure should not deprive it of the jurisdiction in per-

sonam so acquired. On the other hand, in order to subject a non-resident who passes through a state to a judgment in personam for liabilities arising elsewhere, it would be necessary to say that the state had power so to subject him as a condition of allowing him to enter at all, and that for this reason his voluntary entry charged him generally with submissions to the courts. As a matter of its own law of conflicts of law, no court of one country would tolerate such an attempt to extend the power of another; and, as between citizens of states of the United States, constitutional doubts would arise which, to say the least, would be very grave, and which we need not consider."

 In line with the analysis set forth in International Shoe and McGee, it is apparent that a state has a substantial interest in providing a forum to redress tortious injuries committed within its borders by non-residents.[4] We do not feel that this interest is limited to torts arising from dangerous activities. The concept of what is "dangerous" is a slippery one at best, and in our view, the due process clause does not require such nice distinctions. When a non-resident has voluntarily entered a state and invoked the protections of its laws, it does not in our view offend "traditional notions of fair play and substantial justice" to require the non-resident to answer in the courts of that state for any tortious acts committed while there. We therefor hold that Alabama may, consistent with the due process clause of the Fourteenth Amendment, assert jurisdiction over a non-resident, non-qualifying corporation in suits on a claim of liability for tortious injury arising out of activity of the non-resident within the state, even

though only a single transaction is involved, and regardless of whether the activity is considered dangerous.

In sum, we hold first that § 199(1) of the Alabama Code is sufficient, as a matter of statutory construction, to reach the defendant corporation here. This is an Erie question, and we deem our holding to accord with the view of the Supreme Court of Alabama on the subject. Secondly, we hold that in thus asserting jurisdiction, Alabama has not offended the due process clause. Such jurisdiction, as in the case of jurisdiction over non-resident motorists and vessels, rests on the power of a state to afford remedies against persons committing torts while engaged in activity within the state, albeit during a single business transaction.

Reversed and remanded for further proceedings not inconsistent herewith.

4. See Foster, Expanding Jurisdiction Over Nonresidents, 32 Wisc. Bar Bull., Sept.-Oct. 1958, Supplement, p. 4, where the author summarizes the present approach in the following terms:

"The new, flexible standard * * * comes to this: A state may exercise personal jurisdiction whenever, in the context of our federal system, it is

reasonable for the state to try the particular case against the particular defendant. In other words, the modern test depends upon the relation between the state and the particular litigation sued upon. Importance attaches to what, with respect to the action brought, the defendant has caused to be done in the forum state."