388 So.2d 935 (1980)
Coke MATTHEWS, III and Steve Hammack
v.
MOUNTAIN LODGE APARTMENTS, INC. et al.
79-168.
Supreme Court of Alabama.
September 26, 1980.
*936 Frank O. Burge, Jr., and James H. Wettermark, Birmingham, for appellants.
Larry W. Harper of Porterfield, Scholl, Clark & Harper, Birmingham, for appellees.
FAULKNER, Justice.
This is a suit by residential tenants against a landlord for damage to personal property allegedly caused by the landlord's negligent and wanton maintenance of the apartment. Specifically, plaintiffs claim that the landlord negligently repaired or failed to repair a ceiling light in the common breezeway that later caused a fire that destroyed their property. Defendants Mountain Lodge Apartments and Great American Management and Investors Company moved for summary judgment based upon an exculpatory clause in the leases signed by the plaintiffs. The trial court granted the motion, and plaintiffs appealed. We affirm.
Plaintiffs had signed a standard form residential apartment lease with defendant Mountain Lodge Apartments containing the following exculpatory clause:
LIABILITY. The Lessor and its agents shall not be liable to Lessee, or any person claiming through Lessee, for any injury to the person or loss of or damage to property from any cause; without in any wise limiting or restricting the generality to the above, the Lessor and his agents shall not be liable for any claims arising from damage by water from plumbing, heating equipment, drains, rain, snow, flood, or sewer or drain, overflow or backup, nor from the fact that the building or any part thereof, and the appurtenances, equipment, furnishings, fixtures or apparatus located in the premises, or in the building of which the premises are a part, are out of repair, or on account of any claim arising out of any act of an employee of Lessor, or of any tenant or occupant of the building of which the premises are a part.
Plaintiffs lived in the apartments about half a year before the fire occurred. During that time, they had experienced difficulties with the ceiling lights in the common breezeway. There were two hallway lights in the ceiling of the common breezeway adjacent to the plaintiffs' apartments. Testimony indicated that one flickered and dimmed at times while the other went out frequently. The record reveals only one complaint was lodged with the landlord in regard to the ceiling lights. Plaintiff Hammack's wife filed the complaint, as related by her testimony:
Q At the time you called Anna Hicks, I believe you called to complain about a bulb being out?
A Yes. No. My complaint was that the bulb was having to be replaced so often and I was tired of replacing it all the time. But I felt like that, you know, there was some reason why the bulb was going out all the time.
Q All right. Go ahead.
A And so I asked her if, you know, could she check on it and replace the bulb. And she said she would get someone on it.
Q As far as you know, the bulb was replaced?
A Right.
The only evidence connecting the ceiling lights with the cause of the fires was testimony by plaintiffs that they noticed the ceiling of the breezeway on fire when they fled their apartments. The fire then spread to their apartments, destroying all of their property inside.
Appellants raise two issues on appeal:
(1) Should the Court declare an exculpatory clause in a standard form residential lease unenforceable and void as being contrary to public policy?
(2) Is there a scintilla of evidence that the actions of the defendants constitute active negligence beyond the protection of an exculpatory clause?
This Court has consistently upheld the validity of exculpatory clauses in residential leases. Deen v. Holderfield, 275 Ala. 360, 155 So.2d 314 (1963); Wheeler, Lacey & Brown, Inc. v. Baker, 269 Ala. 293, 112 So.2d 461 (1959). In fact, such clauses *937 have been recently recognized as a specific exception to the general rule that a party may not contract against the consequences of his own negligence. Alabama Great Southern Railroad v. Sumter Plywood Corporation, 359 So.2d 1140 (Ala.1978). In Baker v. Wheeler, Lacey & Brown, Inc., 272 Ala. 101, 128 So.2d 721 (1961), this Court stated:
This court has held that exculpatory provisions such as exist in the instant case between private parties are valid and binding upon the parties to the contract. They are not contrary to public policy and will be upheld. Wheeler, Lacey & Brown, Inc. v. Baker, supra; Life & Casualty Ins. Co. of Tenn. v. Porterfield, 239 Ala. 148, 194 So. 173; American Dist. Tel. Co. v. Roberts & Son, 219 Ala. 595, 122 So. 837; McKinney v. Mobile & O. R. Co., 215 Ala. 101, 109 So. 752, 48 A.L.R. 998.
This view is followed across the country. One of the authorities cited by appellants themselves notes:
As indicated above, the great majority of American jurisdictions follow the Restatement of Contracts rule, allowing the landlord to contract away liability for his own future negligence, but not for willful or wanton misconduct. These courts have declared exculpatory clauses valid and not void as against public policy. They have stated that such clauses are not matters of public concern, that they are made between people conducting a strictly private business transaction and are of no concern to the state. These holdings have been predicated on the fact that the parties stand on equal footing with neither the landlord nor tenant under any compulsion to enter into such a contract. In this respect it has also been held that a lower rental or the supplying of utilities by the landlord is valid consideration to upheld such clauses, since the parties are free to bargain in this area. (Footnotes omitted)
Note, Exculpatory Clauses in Standard Form Leases: A Need for Direct Judicial Action, 28 U.Pitt.L.Rev. 85 (1966).
Appellants urge this Court to overrule its prior decisions and strike down exculpatory clauses by way of judicial action. As appellants' brief indicates, the preferred method for invalidating such clauses is by legislative action; at least 20 states have voided these clauses by statute. Appellants rely on a handful of cases from other jurisdictions as examples of courts taking the initiative to change the law in this area.[1] The California case, Henrioulle v. Marin Ventures, Inc., 20 Cal.3d 512, 143 Cal.Rptr. 247, 573 P.2d 465 (1978), is offered as a model to follow.
In a slightly different context, this Court noted the inherent difficulties in basing judicial decisions on public policy. In Hinrichs v. Tranquilaire Hospital, 352 So.2d 1130 (Ala.1977), we stated:
Appellant Hinrichs would have this Court justify the creation of this rule on "public policy" grounds and bases her contention on an Oregon and a California appellate court decision. However, even the California appellate court in Petermann v. International Brotherhood of Teamsters, 174 Cal.App.2d 184, 344 P.2d 25 (1959), confessed that, `"The term "public policy" is inherently not subject to precise definition.... "Public policy is a vague expression, and few cases can arise in which its application may not be disputed...." "`We hold that this is too vague a concept to justify the creation of such a new tort. Such creations are best left to the legislature. [emphasis added]
Appellants' public policy grounds for their positions are based on observations concerning the relative bargaining power of *938 landlords and tenants, the increasing scarcity of apartment housing, and other socioeconomic factors. Appellee points out that homeowner's insurance for tenants is available for protection and that landlords would have to increase rental rates if exculpatory clauses were invalidated. Such factors can be more accurately weighed by the state legislature, which is better equipped to assess the conditions of the marketplace via hearings and other factfinding procedures.
Appellants argue that the state legislature has already spoken in its enactment of Code 1975, § 11-53-1, which authorizes municipalities to promulgate city ordinances regulating apartments. Yet, there is no indication in this legislation of a public policy against exculpatory clauses. If the legislature had wished to declare such clauses void as against public policy, it need only adopt one of the model acts in existence. See, e. g., Uniform Residential Landlord and Tenant Act, § 1.403 (1972). We might add that the record does not indicate any violation by Mountain Lodge Apartments of a city ordinance regulating apartments.
Reaffirming our past decisions upholding exculpatory clauses, we now move on to the second issue of whether the instant case falls without the scope of the exculpatory clause. In Armi v. Huckabee, 266 Ala. 91, 94 So.2d 380 (1957), we held that exculpatory clauses did not bar a claim based on negligent conduct or what has been called active negligence. This case involved a suit for personal injuries resulting from an apartment fire. It was found that the janitor had negligently shoveled hot ashes near combustible material which caused the fire.
In a subsequent landlord-tenant case, we distinguished Armi, finding that a failure to remedy a defect was merely passive negligence. Baker v. Wheeler, Lacey & Brown, Inc., 272 Ala. 101, 128 So.2d 721 (1961). In Baker, a tenant sued her landlord for personal injuries incurred when she tripped on a defective sidewalk outside her apartment. Holding the lease's exculpatory clause applicable, we reasoned:
[T]he failure to correct the defects with the result that the walkway was in an unsafe condition before and while the lease was in force and effect, is the negligence relied on for recovery. This was passive negligence, as brought out in the opinion of this court on the first appeal. The Armi case presents quite a different situation. In that case there was no defective condition which proximately resulted in the plaintiff's personal injuries, but rather an active course of negligence when the landlord's employee shoveled hot coals from the furnace into dangerous proximity to a large amount of combustible materials.
Furthermore, we made no distinction between the apartments or areas leased to the tenants and the common areas such as the breezeway in the instant case.
In other contexts, we have held the failure to inspect and/or remedy a defect to be passive negligence. See Sherman Concrete Pipe and Machinery, Inc. v. Gadsden Concrete and Metal Pipe Co., 335 So.2d 125 (Ala.1976); City of Mobile v. George, 253 Ala. 591, 45 So.2d 778 (1950).
Appellants contend that the instant case falls somewhere between the Armi and Baker cases on the side of active negligence. One theory is that appellees were actively negligent in the maintenance of the entire apartment complex. The only authority cited in support of this notion of active negligence is 62 Am.Jur.2d Premises Liability § 77 (1972). That text cites only a 1905 English case in support of its proposition. Not only is the support of this view weak, but the amorphous concept of a general negligent maintenance of the apartment complex as a whole is far from the specific affirmative act relied on in Armi.
Appellants also contend that defendants were actively negligent in being sent to repair the ceiling light and failing to make satisfactory repairs. They cite no authority finding such conduct or even similar conduct to be active negligence. Yet we have addressed a similar situation in Deen v. Holderfield, 275 Ala. 360, 155 So.2d 314 (1963). In that case, the landlord attempted *939 to repair a leaking kitchen sink. Part of the drain pipe was removed and a bucket placed beneath it to catch the water. It was left in that condition for four days. The plaintiff tenant slipped on the overflow from the bucket while attempting to empty it one day. She sued to recover for personal injuries. Applying in dictum the facts of the case to the passive-active distinction, we stated:
... The Armi and Baker cases hold that a clause exonerating the landlord from damages incurred from any defect in the building, or any cause whatsoever, does not exonerate the landlord from personal injuries attributable to his own active negligent conduct, but it does relieve him from liability based on a defect which involves no affirmative negligence on his part.
While it appears to us that the facts in the instant case would fall into the latter category and thus necessitate a verdict favorable to appellant, it seems unnecessary to categorize appellant's acts as active or passive.
Like Deen, the alleged failure to make a satisfactory repair of the ceiling light in the instant case is far from the affirmative negligent act essential to the Armi holding.
Even assuming that defendants' failure to make a satisfactory repair constitutes active negligence, there is no evidence of an attempted repair to survive the motion for summary judgment granted below. The trial court is bound by the scintilla evidence rule in its considerations of motions for summary judgment. Rule 56, ARCP (Committee Comments). However, we have consistently held that the scintilla doctrine does not vitiate the rule that a conclusion based on speculation or conjecture as to liability is not a proper basis for a verdict. Ingram v. Harris, 244 Ala. 246, 13 So.2d 48 (1943).
There is absolutely no evidence in the record to suggest beyond mere speculation that defendant attempted to repair the ceiling light in the common breezeway. The testimony of plaintiff Hammack's wife regarding a complaint to defendant is set out in the beginning of this opinion. She only testified that the bulb was replaced, not that any repair was attempted or made. The gist of her complaint to defendant was that the light bulb needed replacing, not that repairs of the light fixture were needed.
Appellants also refer in their brief to the testimony of the resident manager of the apartments, Anna Hicks, as evidence that the ceiling light was repaired. They claim she testified that she specifically saw work orders to repair the ceiling light in question. Yet, a close examination of the testimony in context reveals that Ms. Hicks was referring to complaints and work orders concerning various anonymous residents throughout the apartment complex. There is no testimony that she saw a work order to repair the ceiling light that plaintiff complained of. That testimony is set out below:
Q You don't remember her [Mrs. Hammack] ever calling and complaining about her lights?
A Not to me, no.
Q Do you remember anybody at Mountain Apartments, calling the office complaining about their lights?

MR. HARPER: Object to the form of that question as to what time and whatever.
Q At any time before February, is that when it was, in '77, calling and complaining about their lights?
A I had heard of people calling. I had not personally taken the complaint.
Q Who had you heard about it from?
A It was usually on a work order or something when you were filling it.
Q But you had seen the complaints?
A Uh-huh.
Q And you had written up a work order? No. You had seen a work order written up?
A I had seen one, but I had not taken one on the lights or anything of that nature. (emphasis added)
There is nothing else in the record to indicate that a repair was made or attempted *940 by the defendant. As there is no evidence of any active negligence on the part of defendant, the trial court properly found the lease's exculpatory clause to bar recovery by plaintiffs as a matter of law.
AFFIRMED.
TORBERT, C. J., concurs.
MADDOX, ALMON and EMBRY, JJ., concur in the result.
JONES, SHORES and BEATTY, JJ., dissent.
JONES, Justice (dissenting):
I respectfully dissent. The majority's antiquated approach toward a prevalent issue in our mobile society impels me to assume the role of an iconoclast.
While adhesion to stare decisis may in this instance happily align us with the status quo, it again sounds the death knell for reform in an area of jurisprudence crying out for progressive reconstruction.
The majority, unfortunately, has opted to skirt the problem by a cleverly phrased dichotomy of issues that in effect does nothing more than pass the buck to the Legislature or focus on some dubious concept of "active" as opposed to "passive" negligence. In other words, we again retreat.
Where the owner leases parts of the premises to different tenants, and expressly or impliedly reserves other parts thereof, such as entrances, halls, stairways, porches, walks, etc., for the "common use" of multiple tenants and their invited guests, it is his duty to exercise reasonable care to keep safe those parts over which he reserves control; and if he is negligent in this regard and because of his negligence a personal injury results to a tenant or to a person exercising the rights of the tenant, he is liable, provided the injury occurs while a reserved part of the premises is being used in the manner intended. United Shoe Machinery Corp. v. Paine, 26 F.2d 594 (1st Cir. 1928); Johnston v. De La Guerra Properties, 28 Cal.2d 394, 170 P.2d 5 (1946); Dinnan v. Jozwiakowski, 156 Conn. 432, 242 A.2d 747 (1968).
The careful reader will immediately note a lack of reference to "property" damage in the aforementioned authority. Such absence, however, should not prevent an implication that a lessor's duty to protect his tenants against personal injury on common passageways, approaches, etc., likewise includes a duty to assume responsibility for loss of or damage to personal property proximately caused by a lack of due care in maintaining such common areas.
The rule in most jurisdictions is that the landlord's duty extends to repairing defects arising after the tenant takes possession, and is not confined to keeping the premises in the condition in which they were when the tenant took possession. Brandt v. Rakauskas, 122 Conn. 69, 151 A. 315 (1930); Gibson v. Hoppman, 108 Conn. 401, 143 A. 635, 75 A.L.R. 148 (1928).
Appellants contend, and I agree, that the proper approach would be for this Court to overrule its prior decisions and strike down exculpatory clauses by way of judicial action. See e. g., Henrioulle v. Marin Ventures, Inc., 20 Cal.3d 512, 143 Cal.Rptr. 247, 573 P.2d 465 (1978); Weaver v. American Oil Company, 257 Ind. 458, 276 N.E.2d 144 (1971); Papakalos v. Shaka, 91 N.H. 265, 18 A.2d 377 (1941).
While I note that the Appellants have cited only cases involving "personal" injury, I again submit that the gulf between "personal" injury and "property" damages or loss is not so wide that the bridge of the law cannot span it. Indeed, generally, it is foreign to the law of torts to distinguish between liability for property damage and liability for personal injury.
As a second avenue of escape, the majority adopts wholeheartedly a perpetual rule based on passive versus active negligence the latter sometimes said to remove the protection afforded a lessor under the umbrella of his exculpatory clause. While such a distinction may have impressed Professor Prosser, it does nothing to support with reason the denial of a remedy to one injured, whether in person or in property rights.
*941 Once again in our finest hour, having been figuratively tapped on the shoulder, we have shown ourselves, as before, unprepared to deal with an issue of utmost importance.
Through our remembrance of the past, we now condemn others to repeat it.
SHORES, Justice (dissenting):
I dissent. On motion for summary judgment, the movant has the burden to negate the existence of any material fact upon which the fact-finder could conclude in favor of the opposing party. Under the facts revealed by the supporting papers, a finding that the fire was caused by a defective fixture is not compelled. Therefore, it is not shown that the plaintiff's claim is necessarily excluded by the exculpatory clause. Therefore, the movant has not carried its burden. A jury could conclude that the fire did not start from a "fixture ... out of repair." Therefore, it is possible that upon a full development of the facts, the exculpatory clause in the lease would be found inapplicable.
NOTES
[1] The cases cited by appellants are distinguishable from the case at bar in one important respect. Most of them are suits for personal injuries. See, e. g., Henrioulle v. Marin Ventures, Inc., 20 Cal.3d 512, 143 Cal.Rptr. 247, 573 P.2d 465 (1978); Weaver v. American Oil Company, 257 Ind. 458, 276 N.E.2d 144 (1971); Papakalos v. Shaka, 91 N.H. 265, 18 A.2d 377 (1941). Without questioning the validity of exculpatory clauses to bar recovery for personal injuries, we do note that the instant case involves a suit for recovery of damages for property injury only.